THREAD AND GAGE COMPANY, INC., Plaintiff-Appellee and Cross-Appellant, *v.* BRUNO KUCINSKI, Defendant-Appellant and Cross-Appellee— (Bruno Kucinski, Plaintiff-Appellant and Cross-Appellee, *v.* Chain O'Lakes Game Corporation, Defendant-Appellee and Cross-Appellant).

First District (1st Division)   No. 82—1040

Opinion filed June 27, 1983.—Rehearing denied August 1, 1983.

Thomas I. Matyas and Rhonda L. Stern, both of Rosenthal and Schanfield, of Chicago, for appellant.

Max E. Sherman, of Chicago, for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of an action brought by Bruno Kucinski against Chain O'Lakes Game Corporation (now doing business as

Thread and Gage Company, Inc.)[1] alleging breach of contract and seeking damages and interest allegedly due him. Chain O'Lakes denied liability and, under the new corporate name of Thread and Gage Company, Inc. (Thread and Gage), countersued Kucinski in equity for specific performance. The trial court entered judgment in favor of Thread and Gage for specific performance and granted judgment to Kucinski in the sum of $20,000 plus 5% interest from September 1, 1962. Kucinski appeals the amount of damages and the granting of specific performance, and Thread and Gage cross-appeals.

The record reveals that prior to December 21, 1961, Deno Buralli was the owner of an Illinois corporation known as Chain O'Lakes Game Field Corporation. For many years prior thereto, Bruno Kucinski and his family owned and operated a business known as Thread and Gage Company, Inc., which specialized in thread grinding for aircraft parts and high precision machines. The business consisted of a parcel of improved real estate in Schiller Park, Illinois, owned by Kucinski in his own name and various items of machinery owned by two corporations which Kucinski controlled, namely, Thread and Gage Company, Inc., and B. K. Machine Leasing Company. Buralli worked for Kucinski for several years as a manufacturer's representative.

On December 21, 1961, the parties executed a series of agreements to effectuate the sale of Kucinski's business to Buralli's corporation, Chain O'Lakes. The first agreement provided for the sale of the assets of B. K. Machine Leasing Company for $25,000; $5,000 down and the $20,000 balance payable in monthly installments of $250 or more a month commencing on September 1, 1962, with no interest being charged on the principal unless there was a delinquency in any of the installments and, if so, then a charge of 5% interest per annum on the principal, payable each month. The agreement included a list of certain items of machinery that were covered under this particular transaction.

The second agreement between Kucinski and Buralli, as agent for Chain O'Lakes, covered the sale of the assets of Thread and Gage Company, Inc. The agreement stipulated that the $100,000 purchase price was to be satisfied by Chain O'Lakes' payment of $10,000 down and installment payments totaling $90,000 under an installment plan with terms identical to the first agreement. A separate list of machin-

---

[1]Kucinski and his family formerly owned and operated Thread and Gage Company, Inc., and in December 1961 contracted to sell the business to Chain O'Lakes Game Corporation. As part of this transaction, Kucinski's corporation agreed to change its name to allow Chain O'Lakes to assume the corporate name of Thread and Gage Company, Inc.

ery was also included under this agreement.

A third agreement was on a form entitled "Articles of Agreement for Warranty Deed" (warranty deed agreement), whereby Kucinski undertook to sell certain real estate located in Schiller Park, Illinois, to Chain O'Lakes. The agreement provided that the purchase price for the real estate was $75,000; $5,000 down and the $70,000 balance to be paid in monthly installments of $500 or more commencing on September 1, 1962, with no interest charged on the principal unless there was a delinquency in payment and, if so, then 5% was to be charged on the principal balance until the delinquent installment was paid.

The parties further agreed that Kucinski's corporation was to release the corporate name of Thread and Gage Company, Inc., to permit Chain O'Lakes to assume the name. After the documents were signed and the various downpayments were made, a dispute arose between the parties over the fact that certain items of machinery sold to Chain O'Lakes under the B. K. Machine Leasing Company agreement (BKML agreement) were also included under the agreement covering machinery belonging to Kucinski's former Thread and Gage corporation (Thread and Gage agreement). On September 1, 1962, when the first installment payments were due under the three agreements (a total of $1,000; $250 under the BKML agreement, $500 under the warranty deed agreement, and $250 under the Thread and Gage agreement), Buralli, on behalf of Chain O'Lakes, refused to make the $250 payment due under the BKML agreement. Additionally, Buralli testified that he informed Kucinski no future payments would be made under that agreement.

Each month thereafter, Thread and Gage (formerly Chain O'Lakes) made installment payments to Kucinski in the sum of $750, rather than the $1,000 due under all three agreements. The monthly checks were either cashed or deposited by Kucinski.

On May 20, 1969, an attorney, acting on behalf of Kucinski, sent a letter to Thread and Gage requesting payment of $20,000 plus 5% interest, which was claimed due for the machinery covered under the BKML agreement. Thread and Gage, however, continued in its repudiation of the agreement, sending monthly checks in the sum of $750 instead of $1,000.

On March 27, 1973, Kucinski filed a complaint at law, seeking $250 per month, plus interest from September 1, 1962, to February 1, 1973, or a total of $31,250. In its answer, Chain O'Lakes denied liability and on January 10, 1975, countersued Kucinski in equity for specific performance of the articles of agreement for warranty deed. The

suit for specific performance alleged that the $75,000 purchase price set forth in the warranty deed agreement had been paid and that Thread and Gage was, therefore, entitled to the deed.

On December 21, 1976, Kucinski amended his complaint at law and alleged, for the first time, that the failure of Thread and Gage to make payments under the BKML agreement constituted a breach of the other two agreements, thereby triggering interest from September 1, 1962, for the combined balance of all the agreements. The amended complaint sought damages in the sum of $196,000 plus 5% interest.

The trial court found that "all of the documents were in fact executed at one time" and "did in fact constitute one transaction." The trial court further determined that the transaction was to be completed by Chain O'Lakes (the present Thread and Gage) in three separate phases: (1) purchase of the realty under the warranty deed agreement; (2) purchase and payment of the agreement wherein the former Thread and Gage sold all of its assets to Buralli or his nominee; and (3) payments to be made under the BKML agreement.

The trial court further found that the present Thread and Gage was in compliance with the terms and conditions of the first two phases, but that it breached phase three of the transaction in failing to pay the first installment due September 1, 1962, under the BKML agreement. Accordingly, the court awarded judgment to Kucinski in the sum of $20,000 plus 5% interest from September 1, 1962. Upon payment of this judgment, the court ordered Kucinski to specifically perform under the warranty deed agreement and convey a deed to Thread and Gage. The court further ordered Thread and Gage to continue complying with the terms of the second phase.

In accordance with the above order, Thread and Gage tendered payments of $39,981.72 ($20,000 plus 5% interest) and requested the warranty deed. Kucinski refused to accept payment or deliver the deed.

On appeal, Kucinski first argues that the three agreements are to be construed as one contract and that a failure to pay installments under the BKML agreement is a breach of the other two agreements. We reject this argument.

■ Where different instruments are executed at the same time between the same parties and in the course of the same transaction, all the instruments must be read and construed together. (*Sudeikis v. Chicago Transit Authority* (1980), 81 Ill. App. 3d 838, 401 N.E.2d 1114.) It is a fundamental principle that in construing contracts the primary objective is to determine and give effect to the intentions of

the parties. (*AZL Resources, Inc. v. Bromagen* (1979), 79 Ill. App. 3d 76, 398 N.E.2d 292.) The most reliable indicator of the parties' intent can be found in the language used in their contract. (*In re Estate of Savage* (1979), 73 Ill. App. 3d 656, 392 N.E.2d 263.) Where a contract is ambiguous, courts may determine the parties' intent by looking to the interpretation which the parties themselves have placed on the agreement as shown by their contemporaneous or subsequent acts or conduct. See *Winn v. Turner* (1977), 55 Ill. App. 3d 291, 371 N.E.2d 170; *Bulley & Andrews, Inc. v. Symons Corp.* (1975), 25 Ill. App. 3d 696, 323 N.E.2d 806.

■ Here, although the three agreements were executed at the same time and constituted one transaction, we believe that it was the parties' intention to treat payments and defaults under each of the agreements as separately payable and enforceable. First, we note that the language of each agreement is unambiguous; none of the agreements refer to each other. If the parties had intended the failure to pay one of the agreements to trigger a default of the other agreements, they could have provided such terms in the agreement. Courts may not rewrite a contract to suit one of the parties, but must enforce the terms as written. *Schroud v. Van C. Argiris & Co.* (1979), 78 Ill. App. 3d 1092, 398 N.E.2d 103.

Secondly, in September 1962, Buralli told Kucinski no further payment would be made under the BKML agreement because of the parties' dispute over the inclusion of the same machinery in both the BKML and Thread and Gage agreements. If, at that time, Kucinski thought that a default had occurred in the payment of all three obligations, he had available to him effective means of collecting under the agreements. Instead, however, Kucinski accepted payments under the warranty deed and Thread and Gage agreements for more than 10 years before filing suit. Additionally, when Kucinski made a written claim through his attorney for $20,000 plus 5% interest in 1969 under the BKML agreement, he made no reference to any of the other two agreements. Moreover, Kucinski did not seek damages and interest under the other two agreements when he initially filed suit for breach of contract in 1973 against Chain O'Lakes for its failure to make installment payments of $250 per month from September 1, 1962, through February 1, 1973, plus 5% interest. In fact, it was not until 1975, after Thread and Gage brought its action against Kucinski for specific performance of the warranty deed agreement, that Kucinski amended his complaint to include damages and interest under the other two agreements.

Accordingly, the interpretation of the agreements requested by

Kucinski, that a failure to pay installments under the BKML agreement is a breach of the other two agreements, is clearly unreasonable. The trial court correctly concluded that Kucinski could not, and did not, intend for a default to exist for over 10 years while at the same time accepting payments and treating two of the three agreements as viable and up-to-date.

We next consider Thread and Gage's contention that the cause of action on the BKML agreement is barred by Illinois' 10-year statute of limitations for actions on contracts. (Ill. Rev. Stat. 1981, ch. 83, par. 17, now codified as Ill. Rev. Stat. 1981, ch. 110, par. 13—206.) The trial court refused to apply the statute of limitations and held that Thread and Gage was liable for all payments due under the contract, plus 5% interest from September 1, 1962.

The agreement in question provided for installment payments of $250 each month and, upon default in any payment, acceleration of the payments at the option of the seller (Kucinski). The general rule is that where a money obligation is payable in installments, a separate cause of action arises on each installment and the statute of limitations begins to run against each installment as it becomes due. *Light v. Light* (1957), 12 Ill. 2d 502, 147 N.E.2d 34; *Brehm v. Sargent & Lundy* (1978), 66 Ill. App. 3d 472, 384 N.E.2d 55; 18 Williston on Contracts sec. 2026C (3d ed. 1978); 4 Corbin, Contracts sec. 951 (1951); 51 Am. Jur. 2d *Limitation of Actions* sec. 133 (1970).

The general rule applies even though the agreement in this case contains an optional acceleration provision. Where the creditor has the option of declaring all installments payable in the event of default on a single payment, and the creditor fails to exercise the option when the debtor defaults, the rule that each installment carries its own limitation still applies. (See *Honn v. National Computer Systems, Inc.* (Minn. 1981), 311 N.W.2d 1; 18 Williston on Contracts sec. 2027 (3d ed. 1978); 4 Corbin, Contracts sec. 951 (1951).) The option is intended for a creditor's benefit and, therefore, a creditor's failure to take advantage of the optional provision does not self-execute it to a creditor's detriment with respect to the running of the statute of limitations. (See, *e.g., Chase National Bank v. Burg* (D. Minn. 1940), 32 F. Supp. 230; *Frenzel v. Frenzel* (1967), 260 Iowa 1076, 152 N.W.2d 157.) It is only where the acceleration provision of the contract provides that payment of the entire debt upon default is automatic, or where the acceleration provision is optional and the creditor unequivocally exercises the option, that a different rule might apply; it is sometimes held in those instances that the statute of limitations begins to run immediately upon default. *Honn*; 18 Williston on Con-

tracts sec. 2027 (3d ed. 1978); 4 Corbin, Contracts sec. 951 (1951).

■ Here, although Kucinski had the option of accelerating payment, the record does not reveal that he exercised that right after default on the BKML agreement. Therefore, applying the rule that each installment carries its own statute of limitations, we hold that Kucinski's claim under the BKML agreement for monthly payments of $250, which became due September 1, 1962, through March 27, 1963, is barred by the statute of limitations. Kucinski's claim for those monthly payments falling due after March 27, 1963, however, is timely, and he is entitled to the sum of those payments plus interest due under the BKML agreement.

■ We further find that the present Thread and Gage is entitled to specific performance of the articles of agreement for warranty deed. The granting of specific performance rests on sound judicial discretion, to be determined by the facts and circumstances of each individual case. (*Friedman v. 5424 Cornell Corp.* (1978), 65 Ill. App. 3d 7, 382 N.E.2d 296.) Here, the facts reveal that the warranty deed agreement provided for the payment of $75,000; $5,000 down and the balance in monthly installments of $500 or more commencing September 1, 1962. There is no language in the warranty deed agreement to indicate that delivery of the deed is dependent upon anything other than payment of the $75,000 purchase price. Nor does the agreement contain any contingencies with regard to any other agreements. Further, Kucinski had accepted payment on this agreement since 1962, and he never claimed a forfeiture under the agreement. Upon these facts, the trial court, finding that Thread and Gage had complied with the terms under the warranty deed agreement and that Kucinski failed to tender the deed to the realty involved, ordered Kucinski to deliver the warranty deed, subject to Thread and Gage's payment to Kucinski of $20,000 plus 5% interest found due under the BKML agreement. Although Thread and Gage subsequently tendered the amount ordered paid and requested the deed, Kucinski refused the tender of payment. Therefore, under these circumstances, we believe the granting of specific performance in favor of Thread and Gage is justified.

■ Finally, we address Kucinski's request that the trial court's denial of attorney fees be reversed. We note that the BKML agreement included a confession of judgment clause authorizing entry of judgment for the amount due, together with costs and 20% of such amount as attorney fees. Kucinski, however, did not proceed by way of confession of judgment.

The well-established rule in this State is that attorney fees are ordinarily not recoverable unless specifically authorized by statute or

contract. (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 442, 343 N.E.2d 479.) A court may not award attorney fees as a matter of contractual construction in the absence of specific language. (*Qazi v. Ismail* (1977), 50 Ill. App. 3d 271, 364 N.E.2d 595.) Here, no provision in the agreement, other than the confession of judgment clause, authorized attorney fees. Kucinski, having proceeded other than by way of confession of judgment, is therefore not entitled to attorney fees.

For the foregoing reasons, the judgment of the circuit court is modified, and as modified, is affirmed, and the cause is remanded.

Judgment affirmed as modified; cause remanded.

McGLOON and GOLDBERG, JJ., concur.