**WONDERLIC AGENCY, INC., an Illinois Corp., Plaintiff,**

v.

**ACCELERATION CORPORATION, an Ohio Corp., Defendant.**

**No. 85 C 5892.**

United States District Court, N.D. Illinois, E.D.

Nov. 25, 1985.

Gerard Heldrich, Heldrich, Mirabelli, Grombacher & Associates, Chicago, Ill., for plaintiff.

William M. Stevens, William D. Sieth, Rooks, Pitts & Poust, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Wonderlic Agency, Inc. ("Wonderlic") filed this diversity suit against Acceleration Corp. ("Acceleration"), alleging breach of an agency agreement. Acceleration has moved to dismiss the complaint under Fed. R.Civ.P. 12(b)(1) & 12(b)(6), arguing that the parties' agreement requires arbitration of disputes arising out of it.

Since the parties have submitted several material papers outside of the pleadings, we will treat Acceleration's motion to dismiss as one for summary judgment. *See* Fed.R.Civ.P. 12(b). For the reasons discussed below, the Court denies this motion.

The following facts appear undisputed. Wonderlic and Acceleration created an agency relationship through a series of letters and documents in late 1984. Wonderlic agreed to act as Acceleration's agent for the distribution in Illinois of three "products": the sale (1) of automobile rustproofing products, (2) of credit life, accident and health insurance policies, and (3) of automobile "extended service" policies. Acceleration has attached to its motion documentation concerning the latter two services, while Wonderlic has attached to its complaint letters which purportedly create and describe the rustproofing agreement. Wonderlic alleges that it suffered substantial damage when Acceleration terminated the agreement after Wonderlic had stopped its other "rustproofing" activities in reliance on its agreement with Acceleration. Acceleration has also allegedly failed to pay for Wonderlic's services.

Acceleration's motion rests on the theory that the documentation surrounding the parties' relationship amounts to one contract. Because the documents concerning the "credit insurance" and "service policy" arrangements contain arbitration clauses,[1] Acceleration asserts that disputes concerning the third, or "rustproofing" arrangement must be arbitrated as well. Wonderlic contends that there were three separate contracts creating related, but independent, agency relationships, and that the rustproofing agreement contains no arbitration requirement.

Acceleration's motion for summary judgment can be granted only if it can show

---

1. Those clauses say in relevant part:

   *Arbitration.* Any controversy, claim or dispute arising out of this Agreement or a breach of any provision therein, shall be settled by arbitration, in accordance with the Rules of the American Arbitration Association, and Chapter 2711, Ohio Revised Code, or subsequent amendments thereto. The express terms of this arbitration clause shall control over the Ohio Revised Code, and the Ohio Revised Code shall control over the Rules of the American Arbitration Association, in event of any conflict or discrepancy.

that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). We must view the evidence, as well as reasonable inferences created by the evidence, in the light most favorable to Wonderlic, the party opposing the motion. *See, e.g., Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir. 1984). If Acceleration cannot sustain its "strict burden," its motion will fail, even in the absence of opposition. *Id.* But if Acceleration can carry its burden, Wonderlic must bear the resulting burden of creating a genuine issue. Naked pleadings or assertions cannot meet this burden. Fed.R. Civ.P. 56(e); *Big O,* 741 F.2d at 163. Having defined the procedure to follow, we must next determine the substantive law that applies.

The *Erie* doctrine commands that a federal court apply the choice of law rules of the forum state to determine which state's law to apply. *Klaxon v. Stentor Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Illinois, parties may in general agree by contract that a given state's law governs any future disputes arising out of the contract. *See, e.g. Hofeld v. Nationwide Life Ins. Co.,* 59 Ill.2d 522, 529, 322 N.E.2d 454, 458 (1975). This is not such a case. The "agreement" concerning credit insurance says that Ohio law governs disputes. The extended service policy agreement provides that Illinois law governs disputes concerning it. The documentation concerning rustproofing says nothing about choice of law. Faced with the lack of a clear agreement on choice of law, we must apply Illinois' general choice of law rules regarding contract disputes.

The choice of law rule in Illinois for contract cases appears to be in flux. Some recent Illinois opinions have eschewed the traditional, mechanistic approach[2] in favor of the Second Restatement's "most significant relationship" test. *See Illinois Tool Works v. Sierracin Co.,* 134 Ill.App.3d 63, 69, 89 Ill.Dec. 40, 44–45, 479 N.E.2d 1046, 1050–51 (1985); *Boise Cascade Home & Land Corp. v. Utilities, Inc.,* 127 Ill. App.3d 4, 12–13, 82 Ill.Dec. 180, 187, 468 N.E.2d 442, 449 (1984) (dictum); *Champagnie v. W.E. O'Neil Construction Co.,* 77 Ill.App.3d 136, 144–46, 32 Ill.Dec. 609, 615–16, 395 N.E.2d 990, 996–97 (1979). In some cases, the Seventh Circuit too has used only the modern test in applying Illinois choice of law rules. *See Florida Risk Planning Consultants, Inc. v. Trnasport Life Ins. Co.,* 732 F.2d 593, 595 (7th Cir. 1984); *Overseas Development Disc Corp. v. Sangamo Construction Co., Inc.,* 686 F.2d 498, 510 n. 43 (7th Cir.1982) (dictum). Other cases have melded the old and new tests, focussing mechanistically on the place of execution and performance and then applying the most significant relationship test anyhow when the old test yielded no clear result. *See Dr. Franklin Perkins School v. Freeman,* 741 F.2d 1503, 1515 n. 19 (7th Cir.1984); *American National Bank & Trust Co. v. Weyerhaeuser Co.,* 692 F.2d 455, 460 n. 10 (7th Cir.1982); *Zlotnick v. MacArthur,* 550 F.Supp. 371, 373–74 (N.D.Ill.1982) (Moran, J.); *McIntosh v. Magna Systems, Inc.,* 539 F.Supp. 1185, 1188 (N.D.Ill.1982) (Aspen, J.). And other courts have stuck with the traditional approach. *See Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 591 (7th Cir.1984) (applying part of old test without discussion); *NII Metals Services, Inc. v. ICM Steel Corp.,* 514 F.Supp. 164, 166 (N.D.Ill.

**2.** Judge Moran stated the mechanistic test as follows:

> Under traditional Illinois conflict of law principles, the validity, construction and obligation of a contract are determined by the law of the place where it is made and performed. *Walker v. Lovitt,* 250 Ill. 543, 95 N.E. 631 (1911). Where the place of performance differs from the place of making the contract, and the agreement is to be performed wholly in one jurisdiction, then the law of the place of performance governs. *Ehrman v. Cook Electric Co.,* 468 F.Supp. 98, 99 (N.D.Ill.1979), *aff'd* 630 F.2d 529 (7th Cir.1980). If more than one place of performance is involved, the place of contracting determines the construction of the document. *Charles O. Finley & Co., Inc. v. Kuhn,* 569 F.2d 527, 542 (7th Cir.), *cert. denied,* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978).

*Zlotnick v. MacArthur,* 550 F.Supp. 371, 373 (N.D.Ill.1982) (footnote omitted).

1981) (Shadur, J.); *DP Service, Inc. v. AM International,* 508 F.Supp. 162, 164–65 (N.D.Ill.1981) (Shadur, J.) (recognizing modern trend but holding that Illinois had not yet applied modern test in contract cases). Although we have seen no Illinois Supreme Court opinions on the issue, we think if faced with the issue it would and should adopt the modern approach, as it did for tort cases in *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970).[3] *See Zlotnick,* 550 F.Supp. at 373 n. 2; *Boise Cascade,* 127 Ill.App.3d at 13, 82 Ill.Dec. at 186–87, 468 N.E.2d at 448–49.

Under the most significant contacts test, the Court must examine five factors: (1) the place of contracting; (2) the place of negotiations; (3) the place of performance; (4) the situs of the subject matter of the contract; and (5) the domicile, residence, place of incorporation and place of business of the parties. *Dr. Franklin Perkins School,* 741 F.2d at 1515 n. 19; Restatement (Second) of Conflicts § 188 (1971). The record is unclear as to factors (1) and (2). Factor (5) cancels out viz. Ohio and Illinois, and factor (4) is irrelevant. However, factor (3) clearly favors Illinois. The parties created an agency relationship, which calls for Wonderlic, an Illinois corporation, to sell Acceleration's products and services in Illinois. While Acceleration was to supply rustproofing chemicals and provide the insurance, Wonderlic was to perform the bulk of the work called for under the contract in Illinois. And Acceleration was to send payment into Illinois. On balance, then, while Ohio has some tie to and interest in this suit, Illinois' connection is greater and its law should apply.

Under Illinois law, the intent of the parties at the time the deal was made determines whether there was one contract or three. *See, e.g., Thread and Gage Co., Inc. v. Kucinski,* 116 Ill.App.3d 178, 182–83, 71 Ill.Dec. 925, 928, 451 N.E.2d 1292, 1295 (1983). Where different instruments that are part of the same transaction are involved, all the instruments must be read together to ascertain the parties' intent. *Id.* at 182, 71 Ill.Dec. at 928, 451 N.E.2d at 1295. The language of the contract(s) is (are) the best indicator of intent, but extrinsic evidence may be considered to determine intent when the contractual language is ambiguous. *Id.* at 183, 71 Ill.Dec. at 928–29, 451 N.E.2d at 1295–96.

▪ At this point in the case it is obvious that a genuine factual question remains as to whether the parties intended one contract or three. Construing the evidence in the light most favorable to Wonderlic, we see several facts indicating that the parties created three separate agreements: First, as we noted earlier, two of the documents contain conflicting choice of law provisions. This conflict suggests that those two agreements were separate and independent. Second, both of those agreements contain integration clauses, which also suggest independent contracts. Finally, these documents were executed on different days and expire at different times. The credit life insurance document is dated November 1, 1984, and was to expire November 1, 1985. The Extended Service document is dated October 1, 1984, and was to expire on October 1, 1985. The letters which allegedly create the rustproofing agreement are dated September 20, October 17 and November 5, 1984. These differing dates again strongly suggest that the parties created a series of independent, albeit related, contracts.

The *Kucinski* case illustrates that Illinois courts will not necessarily construe closely related documents as one contract. The defendant in *Kucinski* contracted to sell his business to the plaintiff. Two of the agreements involved the sale of two corporations controlled by defendant. The third involved the sale of a piece of land which one of the corporations had owned.

---

**3.** Even under the "melded test" the most significant relationship test would apply here. As noted in the text below, the place of contracting is unclear, and the place of performance is not limited to Illinois, since both parties will perform in their home states. Thus, the cases cited earlier, such as *Perkins School* and *Zlotnick,* would fall back onto the modern test in this case anyhow.

Each of the agreements required monthly installment payments, each due the same day each month. A dispute ultimately arose over one of the agreements, and defendant failed to pay the installments due under that one, although he paid the other two agreements. The plaintiff argued that there was one overall contract, and that the one breach breached all three "agreements." The Court construed the language of the agreements, as well as the parties' conduct, and held that the parties intended three separate contracts. 116 Ill. App.3d at 183–84, 71 Ill.Dec. at 929, 451 N.E.2d at 1296.

While *Kucinski* makes clear that the question depends on the facts of each case, it is at least arguable that the case there was *stronger* for one contract than the one here. Unlike here, all three agreements in *Kucinski* were signed the same day, called for simultaneous monthly payments and were internally consistent, yet the court held that three contracts had been intended. In the present case, the three agreements begin and end on different days and are internally inconsistent. These discrepancies argue against a finding that the parties intended one contract.

However, we need not decide now whether the parties definitively intended one contract or three. Suffice it to say that Acceleration has not sustained its burden on summary judgment of showing that the parties clearly intended one contract. An affidavit of Acceleration's vice-president does not extinguish this genuine issue of fact. He avers summarily that there was one overall agreement. While we may assume for argument that there was one business transaction, whether there was

one contract is a legal question, and the vice-president's statement on this point carries little, if any, weight. Even if we assume that he meant to make the factual assertion that the parties *intended* one agreement, a factual issue remains on this point. His statement must be taken in the context of the evidence discussed above, which shows manifestations of intent that there be three contracts. Thus, even if we were not to disregard the affidavit, we must construe it and the other evidence in the light most favorable to Wonderlic. From such a perspective, it is clear that Acceleration has failed to show that one agreement was created.

That being the case, the pivotal issue of fact remains unresolved—whether the parties intended that disputes over the rustproofing agreement be arbitrated. On the one hand, the arbitration clauses in the other two agreements arguably suggest that the parties intended to arbitrate disputes concerning the third.[4] On the other hand, their inclusion of a specific arbitration clause in the first two agreements and their omission of such a clause in the third just as plausibly suggest that they did not intend arbitration for the third. We need not (and lacking other evidence of intent, cannot) resolve this dispute now. Clearly, though, a genuine issue of material fact exists on whether the parties intended arbitration for the rustproofing transaction. Accordingly, Acceleration's motion for summary judgment must be denied.

While we express no opinion on whether the parties' contract requires arbitration as a matter of law, we suggest to Wonderlic that it consider submitting to arbitration

---

**4.** In this respect, the case Acceleration relies upon, *Tepfer v. Deerfield Savings & Loan Ass'n.*, 118 Ill.App.3d 77, 73 Ill.Dec. 579, 454 N.E.2d 676 (1983), might be relevant. *Tepfer* states the general rule that "where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract." *Id.* at 80, 73 Ill.Dec. at 582, 454 N.E.2d at 679. Assuming that there was one overall business transaction, we think that the two arbitration

clauses are relevant, but not necessarily controlling, on the issue of whether the parties intended arbitration for the third agency relationship. However, Acceleration is wrong that *Tepfer* mandates a finding that the parties intended one contract. The rule quoted above operates "in the absence of a contrary intention." 118 Ill.App.3d at 80, 73 Ill.Dec. at 582, 454 N.E.2d at 679. As discussed earlier at 804–05, the instruments here are internally inconsistent and at least suggest a "contrary intention" that there be more than one contract.

806

voluntarily. This is a simple breach of contract suit, tailor-made for arbitration. This Court has long advocated alternative methods of dispute resolution for cases like this, where prolonged litigation is in the interests of neither party. The parties are to confer prior to the next status hearing with a view toward negotiating a settlement or agreeing to voluntary arbitration. At the next status hearing, the parties shall report on their prospects for settlement and the acceptability of voluntary arbitration if settlement is not imminent.

For the foregoing reasons, Acceleration's motion for summary judgment is denied. It is so ordered.