**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, Plaintiff,**

v.

**PROTECTION MUTUAL INSURANCE COMPANY, an Illinois corporation, Defendant.**

No. 85 C 9678.

United States District Court, N.D. Illinois, E.D.

April 1, 1987.

---

Henry R. Daar, Stephen D. Marcus, Clausen Miller Gorman Caffrey & Witous, Chicago, Ill., for plaintiff.

Roseann Oliver, Peter M. King, Phelan Pope and John, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In this diversity action, plaintiff St. Paul Fire & Marine Insurance Co. ("St. Paul") seeks to recover from defendant Protection Mutual Insurance Co. ("Protection Mutual") the amount of $2,052,800 it paid to their mutual insured, the Caterpillar Tractor Company ("Caterpillar"). Currently before the Court are the parties' cross-motions for summary judgment. For the reasons noted, we deny plaintiff's motion and grant defendant's motion for summary judgment.

### FACTS [1]

St. Paul issued an all risks insurance policy to Caterpillar. Protection Mutual

---

1. These facts are taken from each parties' statement of material facts filed with their motions for summary judgment pursuant to Local Rule 12(e). Pursuant to Local Rule 12(f), each party opposing a motion for summary judgment shall file "a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, including with that statement references to the affidavits, parts of the record and other supporting materials relied upon to support such statement." Failure to do so results in admitting all facts set forth in the statement required under 12(e) by the moving party. Only defendant Protection Mutual filed a statement under Local Rule 12(f), but it did not controvert any of the facts set forth in St. Paul's statement of material facts. Therefore, all facts set forth in each parties' respective 12(e) statements are admitted. St. Paul did, however, in its response to Protection Mutual's motion for summary judgment, claim that there is still a dispute as to proximate cause necessitating submission of this issue to the jury. Because we find that this is not true, that is there is no need to submit a proximate cause question to the jury, we do not decide whether a disputed fact may be so raised, despite the failure to preserve the issue in a 12(f) statement.

issued an insurance policy to Caterpillar for Boiler and Machinery coverage.[2]

On June 20, 1984, an accident occurred at Caterpillar's Mapleton, Illinois, plant. As a result of this accident St. Paul made a 2.1 million dollar payment to Caterpillar for loss and damage resulting from the accident, principally to pay the costs of removing polychorinated biphenyl[3] ("PCB") from the accident site. St. Paul requested that Protection Mutual in turn pay St. Paul approximately 2.05 million dollars in accordance with the terms of Protection Mutual's Boiler and Machinery policy with Caterpillar. St. Paul paid Caterpillar directly rather than make Caterpillar seek recovery from Protection Mutual because of an "Other Insurance Condition" clause in the St. Paul policy which St. Paul found required it to pay the insured and then seek recovery from Protection Mutual directly.

There are two versions of what happened at the plant on June 20, 1984, and each party adopted the other's version for purposes of their respective motions for summary judgment.

*Protection Mutual Findings*

For purposes of its motion, St. Paul adopted Protection Mutual's findings concerning the accident at Caterpillar:

a. At issue is damage to an induction furnace and related electrical equipment owned by Caterpillar, located at Mapleton, Illinois, and PCB contamination sustained at the insured's property.

b. Caterpillar uses 10 to 12 induction furnaces to melt iron required for casting. Each furnace has associated with it five banks of capacitors,[4] each bank consisting of about 48 capacitors.

c. The capacitors are switched in and out as needed to conserve power and to control the furnace temperature; the capacitors are switched in and out by a contractor.

d. Two contractors are located at the top of each bank of capacitors, approximately six and one-half feet from the floor.

e. Two types of capacitors are used at Caterpillar. The original capacitors were manufactured by General Electric and each contains approximately 1.7 gallons of PCB as a dielectric.[5] Beginning in 1978, Caterpillar began phasing out these capacitors and replacing them with Westinghouse capacitors, which contains [sic] an environmentally safer liquid. At the time of the accident, only a small percentage of the capacitors had been so converted; but Caterpillar kept no records identifying which capacitors had been replaced.

f. Prior to the accident, one or more gallons of oil, believed to be hydraulic fluid which had leaked from nearby hydraulic cylinders, had accumulated at the base of capacitor bank No. 6.

g. On June 20, 1984, at 6:15 p.m., two Caterpillar employees, working about 30 feet from the No. 6 capacitor bank, heard two pops followed by a loud hissing sound. When they investigated, they observed that a fire had broken out at the base of capacitor bank No. 6.

h. The ensuing fire caused about 75 capacitors containing PCB to rupture, spilling their contents onto the floor.

i. Various other contactors, capacitors, electrical panels and wiring, and steel support columns were also damaged as a result of the accident.

j. The fire was extinguished using fire extinguishers containing chemicals.

21. PROTECTION MUTUAL concluded that a contactor arced and that the resultant fire caused the sequence of events which in turn caused the release

---

**2.** Protection Mutual also issued a supplemental fire policy to Caterpillar, however, it has a 5 million dollar deductible and is not at issue in this case.

**3.** PCB was used as a dielectric in electrical equipment, but is now being phased out because it is also a poisonous environmental pollutant.

**4.** A device for storing an electrical charge.

**5.** A dielectric is a material that does not conduct electricity.

of the PCB contaminants into Caterpillar's reservoir.

(Plaintiff's Statement of Material Facts, 8–11).

### St. Paul's Findings

For purposes of its motion, Protection Mutual adopted St. Paul's findings concerning the accident at Caterpillar:

A. The occurrence began when a capacitor shorted in bank A for the number 6 furnace. This shorted capacitor in turn caused the expulsion of flaming PCB materials. The flaming materials fell to the ground onto a pool of oil which had accumulated in front of the capacitor bank well before the occurrence began. A fire began when the flaming materials hit the pool of oil.

B. A contactor failed sometime after the capacitor failure.

C. The resulting fire caused damage to the remaining capacitors that were damaged.

(Defendant's Statement of Material Facts, 3).

The difference between the two accounts centers upon what hit the oil to ignite it. It is St. Paul's position that the incident was started by a short circuit and arcing in a capacitor, which then caused the capacitor to ignite and expel flaming PCB material which hit the oil on the floor and ignited the oil which then started the fire. Protection Mutual's scenario suggests that the accident occurred because of arcing to a contactor, which caused molten pieces of the contactor to drop into the oil on the floor which then started the fire.

The parties do not disagree as to what happened once the fire began, when security personnel at the plant shut off the main circuit breaker for the No. 6 unit. Thereafter, noting that cooling water for all of the furnaces had been lost, they switched on a manual cooling system to prevent overheating of the furnaces. When the valves were opened, water poured into and through a trough located in the floor of the electrical pit area. Water began to rise in the trough. Plant personnel feared that the water would spill over onto the electrical floor and short circuit the electrical equipment. Personnel cut in a stand-by pump which discharged the water outside the building onto Caterpillar's back lot, where it found its way into the storm drains and eventually into Caterpillar's lagoon. When the capacitors ruptured and spilled their contents, toxic PCB found its way into the trough and was discharged out of the building with the water when the stand-by pump was switched on. The Environmental Protection Agency then required the clean up of the toxic PCB material according to its specifications.

### Motion for Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, Rule 56(c) requires the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). With these standards in mind, we turn to the parties' motions for summary judgment.

### The Parties' Positions

St. Paul contends that it is entitled to summary judgment as a matter of law even under Protection Mutual's accident scenario because Protection Mutual's Boiler and Machinery policy obligated Protection Mutual to pay Caterpillar "for all loss or damage to property directly caused by such Accident to an Object ..."[6] and also to pay for the "expense of removal from

---

6. An object is defined under Protection Mutual's Policy as "Machines or Apparatus which Generate, Transmit, Control, Convert or Receive Mechanical, Electrical, Hydraulic or Pneumatic Energy or Power...." (Exhibit C to Plaintiff's motion).

the described premises of debris remaining after any loss hereby insured against...." (Exhibit C to Plaintiff's Motion). St. Paul explains that the reason it went ahead and paid Caterpillar for this accident is that St. Paul was obligated to do so under an "other insurance" clause in the St. Paul policy with Caterpillar. St. Paul's position is that in the absence of other coverage, fire is an insured peril under the St. Paul policy. Therefore, notwithstanding the existence of such other coverage, in section I.B.9 of its policy, St. Paul:

> guarantees prompt payment in full amount of the loss which would otherwise have been recoverable hereunder, and agrees to advance the amount of loss as a loan, without interest, repayable only in the event of and to the extent of recovery from other insurance.

Thus, St. Paul paid Caterpillar, which then subrogated its rights against Protection Mutual to St. Paul.

Essentially, St. Paul's position is that Protection Mutual is liable under its policy for all loss to property "directly caused" by an accident to a covered object under Protection Mutual's Boiler and Machinery policy. St. Paul contends that the accident was the efficient, superior and controlling agency which caused Caterpillar's loss. St. Paul acknowledges that the fire was nearer in time to the loss, but that it was the arcing to a contactor (or short circuit and arcing in a capacitor) which initiated the sequence of events which caused the fire and the resultant damage. St. Paul concludes that the arcing (or short circuit) was the proximate cause of the entire loss. Protection Mutual is responsible therefore, according to St. Paul, for the PCB clean up pursuant to a debris removal clause in the Protection Mutual policy.

Protection Mutual first argues that St. Paul is liable for the damage under the terms of the St. Paul all risks policy. The St. Paul policy excludes boiler and machinery coverage, but required Caterpillar to secure such coverage from another insurer. Caterpillar purchased this additional insurance from Protection Mutual. The St. Paul policy exclusion provides:

> 1. *Perils Excluded*
>
> This policy does not insure against loss or damage caused by or resulting from:
>
> \*       \*       \*       \*       \*       \*
>
> c.   (Applying only to the United States of America and Canada and to production machines world-wide)
>
> (1) Electrical injury or disturbance to electrical appliances, devices, or wiring caused by electrical currents artificially generated *unless loss or damage from a peril insured herein ensues and then only for ensuing loss or damage;*

(Exhibit B to Plaintiff's Motion). Protection Mutual contends that under this clause, coverage extends to a fire loss ensuing from an electrical disturbance because fire is a covered peril under the St. Paul policy.

Protection Mutual acknowledges that arcing on a contactor (St. Paul's scenario) would generally be covered under the Protection Mutual Boiler and Machinery coverage. However, Protection Mutual contends this does not make it responsible for the resulting damage from the fire. Protection Mutual contends that the St. Paul and Protection Mutual policies were designed to dovetail and not to overlap. Thus, Protection Mutual contends that Protection Mutual is liable only for damage to the destroyed contactor and its molten debris, and that St. Paul is liable for the ensuing fire and resulting damages as a covered peril under its all risks policy. Protection Mutual also argues that its debris removal clause does not provide independent coverage for the PCB clean up. Protection Mutual's debris removal clause provides:

> This Policy also covers expenses of removal from the described premises of debris remaining after *any loss hereby insured against* ... (Protection Mutual Policy, p. 1 of 12).

Protection Mutual argues that because the fire was not a loss insured against, the debris clause does not apply. St. Paul, on the other hand, contends that Protection Mutual is liable for the clean up, under St.

Paul's theory that the fire was the result of the electrical accident. St. Paul also has a debris removal clause which provides:

*Perils Insured Against*

For all coverages and property insured by Section I.A.1. through 11. this policy insures against all risks of physical loss of or damage to property insured including:

a. The expense of removal of material and debris of property damaged by an insured peril;

(Exhibit B to Plaintiff's Motion). Protection Mutual argues that because St. Paul provides Caterpillar's primary fire coverage, St. Paul must indemnify Caterpillar for the fire-related debris removal, including the PCB clean up.

## DISCUSSION

For our purposes the disagreement as to the cause of the accident, the arcing vs. the short circuit, is an immaterial dispute of fact that does not prevent us from deciding this motion for summary judgment. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Plaintiff St. Paul argues that in the event we must deny summary judgment in its favor, then there is a material dispute of fact that precludes our granting the Protection Mutual cross-motion for summary judgment. Specifically, St. Paul contends that we must submit the issue of proximate cause to a jury to determine whether the PCB damages were the direct or indirect result of a covered boiler accident. We disagree. The parties do not dispute that the accident with the electrical equipment, the arcing or short circuit, was a "cause in fact" of the fire. There is evidence that "but for" the fire, there would be no PCB contamination, but there was also evidence that "but for" the electrical accident there would be no fire. The disagreement instead is whether the electrical accident is the legal cause of the PCB contamination under the terms of the parties' various policies and under the applicable law. This is a question of law for this Court to determine, not a question of fact for the jury.

We find that each parties' position as to the proper interpretation of the other's policy is correct. St. Paul's policy, while not specifically covering electrical injury, does cover fire damage which ensues from the electrical injury. Protection Mutual's policy covers all loss or damage to property directly caused by an electrical accident. Both policies also cover the cost of removing debris remaining after covered losses.[7] Thus, we have a situation where two policies could conceivably apply to cover this incident.[8] Each also contends that their

---

7. Both parties assume that the clean up of PCB contamination is covered under a debris removal clause. Because they agree on this point, we have no occasion to construe the debris removal clause.

8. Protection Mutual makes one argument that would appear to exonerate them from liability under the terms of their policy. However, there is not sufficient evidence to support Protection Mutual's motion at this point. We do hold, however, that there is sufficient evidence from which we could and do alternately deny St. Paul's motion for summary judgment on this basis. In a footnote, Protection Mutual argues that their policy does not provide coverage to clean up the PCB contamination to the outside of the Mapleton Plant. Protection Mutual's Policy states: "This policy does not cover loss or damage to land." (Plaintiff's Statement of Material Facts, Exhibit C, Form FMB–D–1, Section I, Exclusions). Protection Mutual then claims that this clause applies to exclude from coverage the amount of $1,742,126 that Caterpillar paid the Peoria Disposal Company to clean up the PCB contamination as noted on Plaintiff's Exhibit J. If all of the 1.7 million dollars paid to the Peoria Disposal Company covered the clean up of the land outside of the plant, then it would appear, although we need not so decide, that Protection Mutual would have no liability for this accident. St. Paul is seeking to recover $2,052,800. If we subtract from that figure the amount allegedly incurred in cleaning up the land, $1,742,126, we are left with a potential claim of $310,674, a figure well under Protection Mutual's $500,000 deductible on its Boiler and Machinery coverage. We do not, however, grant Protection Mutual's motion on the basis of the land exclusion because we think that Exhibit J is insufficient evidence that the entire 1.7 million dollars paid to the Peoria Disposal Company covered only the cost of the cleaning up

policy does not apply because the other applies. St. Paul points to its "other insurance" clause which it contends excludes coverage which would otherwise be deemed applicable to the loss:

> to the extent of any other insurance ... whether directly or indirectly covering the same property against the same perils. (§ I.B.9.).[9]

Protection Mutual argues that, although its coverage applies to the initiating cause of the entire incident, the electrical arcing or the short circuit, it does not cover fire that ensues from such an incident. Thus, we have a situation where each policy may potentially cover the accident. To decide how to resolve the question of which insurer must pay, we look to case law.

Protection Mutual argues that under Illinois law,[10] when two causes, one insured by A and the other by B, join to cause a loss, each insurer must pay for the damage caused by its covered peril, if the damages can be discriminated, citing *Mammina v. Homeland Insurance Company of America*, 371 Ill. 555, 21 N.E.2d 726 (1939). Protection Mutual contends that the loss resulted from two causes, arcing on a contac-

tor and a fire, and that the damages caused by the ensuing fire can be readily distinguishable from the electrical arcing damages. St. Paul does not dispute that the damages are readily distinguishable, but contends that Protection Mutual's position is merely a "red herring." We disagree.

St. Paul's position is that Protection Mutual's policy covers the damage, and therefore Protection Mutual should pay the entire amount or at the least a prorated amount.[11] But, as we noted above, St. Paul's policy also covers the loss.

■ St. Paul also rejects the applicability of *Mammina*. In *Mammina*, a truck was destroyed when it collided with a freight train and then burst into flames. Homeland Insurance had issued a fire insurance policy to the truck owner in the amount of $2,000. The evidence showed that the value of the truck after the collision and fire was $100, but that the value of the truck before the fire started, but after the collision, was $350. Because the truck was worth $2,250 before the entire accident, the plaintiff insured sought to recover to the limits of the fire policy, $2,000. The Su-

the land outside of the plant. The description of the damage also includes extensive PCB contamination inside the plant.

**9.** We note, without so deciding, that this clause does not seem to apply when the other coverage is of a different peril. There is no question that the Protection Mutual policy covers a different peril, here an accident or injury from electrical equipment and not fire, the peril covered under the St. Paul policy.

**10.** In diversity cases a federal court must follow the conflict of law principles prevailing in the state in which it sits. *Klaxon v. Stentor Electric Mfg.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, we look to Illinois choice of law principles. St. Paul is silent on the choice of law issue, but Protection Mutual states that Illinois law applies. An insurance policy is merely a species of contract. This Court has taken the position that if the Illinois Supreme Court were faced with the issue, it would adopt the "most significant contacts" approach of the Restatement (Second) of Conflicts. *Wonderlic Agency, Inc. v. Acceleration Corp.*, 624 F.Supp. 801, 804 (N.D.Ill.1985). Under the Restatement's "most significant contacts" approach, the principal location of the insured risk is the most significant contact, and the location's law will govern the dispute unless some other state has a

more significant relationship to a particular issue.

> § 193 Contracts of Fire, Surety or Casualty Insurance
> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflicts § 193 (1971). In this case, the insured risk is located in Illinois and because there does not appear to be any other state that has a more significant relationship with a particular issue, we will apply the law of Illinois to this case.

**11.** St. Paul identifies Protection Mutual's pro rata liability as $2,050,747.20 because this is 99.9% of the amount at issue and because Protection Mutual's policy limits are 99.9% of Caterpillar's total liability insurance. Because we decide the issue in the manner we do, we have no occasion to pass on the merits of this pro rata method.

preme Court of Illinois held that plaintiff was only entitled to recover $250 on the insurance policy: the difference between what the truck was worth after the collision and before the fire and then the value of the truck after the fire. The insurance company was held liable despite the fact that the loss was initiated by a non-covered cause, the collision. We agree that *Mammina* supports Protection Mutual's position. The only difference we see between this case and *Mammina* is when most of the damage occurred. In *Mammina*, most of the damage occurred before the fire started and here most of the damage occurred after and because of the fire. St. Paul does not deny that it was the fire that caused the Caterpillar personnel to dump the toxic PCB chemical into the ground which resulted in the 2.05 million dollar clean up bill. The arcing on the contactor or the short circuit in no way caused the PCB to be dumped all by itself, the fire was needed to bring about that result. *Mammina*, although not concerning two insurance companies, approvingly states the following proposition:

In case of the concurrence of two causes of loss, one at the risk of the assured and the other insured against, or *one insured against by A and the other by B, if the damage can be discriminated, each party must bear his proportion.*

*Mammina*, 371 Ill. at 559, 21 N.E.2d at 196. The fact that the fire policy was held to cover the damage caused by the fire, despite the fact that a non-covered occurrence started the chain of causation that ended in the fire supports the application of the *Mammina* principle in this case. Here, just as in *Mammina*, a non-covered or separately covered, incident initiated the chain of events that resulted in a covered fire.

In *Mammina*, it was a collision, here it was an electrical accident, but both initiated ensuing fires. If the Supreme Court of Illinois had applied the proposition of law that St. Paul urges upon this court, then it would not have held the fire insurer liable for even the $250 worth of damage caused by the fire. Therefore, we reject St. Paul's position that Protection Mutual is liable for the PCB clean up and instead rely on the principle enunciated in *Mammina*, that is, when there is a concurrence of two causes of loss, one insured by Protection Mutual, the arcing or short circuit, and the other insured by St. Paul, the fire, and where the damages caused by each peril can be discriminated, each insurer shall bear his proportion of the loss. *Accord,* 18 *Couch on Insurance 2d* § 74:721 (1983).[12] Therefore, we find that St. Paul is liable for the costs associated with the PCB clean up because it is directly attributable to the fire.

In conclusion, finding that there are no genuine issues of material fact and that we can decide this motion as a matter of law, we deny St. Paul's motion for summary judgment and grant Protection Mutual's motion for summary judgment. It is so ordered.

---

**12.** *Couch* provides the following guidance on this issue:

§ 74:721. Independent concurrent cause.

It is necessary to distinguish between the problems of proximate cause and a train of events, on the one hand, and separate losses sustained because of independent causes, on the other. If the insured sustains a loss which is partly due to a covered cause and partly due to one which is not covered and it is possible to allocate to each the amount of loss caused thereby, it is apparent that the insurer is only liable for that part of the total loss which is shown to have been the result of the "covered" cause. Conversely, it is held that where two causes join in causing an injury, one of which is insured against, the insured is covered by the policy.

We think this also supports Protection Mutual's position, because unlike a situation where there is one injury, in this case there are separate and identifiable losses, the electrical damage and the fire damage.