**Albert M. ZLOTNICK, Plaintiff,**

v.

**J. Roderick MacARTHUR and The Bradford Exchange, Ltd., Defendants.**

No. 80 C 4754.

United States District Court,
N.D. Illinois, E.D.

Sept. 24, 1982.

Barnett & Beigel, Ltd., Chicago, Ill., for plaintiff.

D'Ancona, Pflaum, Wyatt & Riskind, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Albert Zlotnick ("Zlotnick") brought this action pursuant to this court's diversity jurisdiction against J. Roderick MacArthur ("MacArthur") and the Bradford Exchange, Ltd. ("Bradford"), claiming that he is entitled to a finder's fee in connection with defendant's acquisition of a New York company known as Hammacher-Schlemmer, Inc. ("Hammacher-Schlemmer"). In Count I of the complaint plaintiff seeks recovery of the fee based on an alleged oral agreement with MacArthur, the president of Bradford, to pay Zlotnick if

Bradford actually acquired Hammacher-Schlemmer. Alternatively, Count II is based on the theory of *quantum meruit.*

Defendants have moved for summary judgment on the grounds that under the applicable principles of conflict of laws New York law governs this action, and that the New York Statute of Frauds (N.Y.Gen. Oblig.Law § 5–701(a)(10) (McKinney)) bars plaintiff's claim. For the reasons discussed below, the motion for summary judgment is granted.

*Factual Background* [1]

Zlotnick, a New York resident, is a business-finder and an investor, operating out of both New York and Florida. In late April 1978 Zlotnick learned that Hammacher-Schlemmer was being offered for sale by Gulf and Western Industries ("G & W"). Hammacher-Schlemmer is a New York corporation located in New York, G & W is a Delaware corporation with its principal place of business and corporate headquarters in New York. Soon thereafter plaintiff, from his office in New York City, telephoned MacArthur, an Illinois resident, in Morton Grove, Illinois, and informed MacArthur that he knew of a business in New York which might match the business objectives of Bradford. According to plaintiff MacArthur expressed interest in the deal and agreed to pay one-half of Zlotnick's finder's fee if his company purchased the business. (Dep. of A. Zlotnick, p. 22.) Zlotnick then told MacArthur the name of the company and MacArthur asked Zlotnick to send more information regarding Hammacher-Schlemmer to a Bradford executive in Illinois.

On May 4, 1978 Zlotnick sent to Bradford headquarters a written confirmation of the finder's fee agreement, along with the financial information which MacArthur had requested. During the next several weeks plaintiff and defendants engaged in numer-

---

1. A motion for summary judgment will be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c). For purposes of the motion the factual record is viewed in a light most favor-

able to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Central Nat. Life Ins. v. F. & D. Co. of Md.,* 626 F.2d 537, 539 (7th Cir.1980).

ous phone conversations and Zlotnick arranged a meeting for May 18, 1978 in New York City between the seller and defendants, so that the parties could discuss the proposed sale, and to enable the potential purchasers to inspect the business.

Shortly thereafter Zlotnick met with MacArthur in New York, at which time MacArthur told Zlotnick that he did not intend to pay plaintiff any fee and, moreover, that his company had no interest in acquiring Hammacher-Schlemmer.

Nevertheless, defendants continued negotiating directly with the sellers, and on April 28, 1980 G&W and Bradford executed a purchase agreement at G & W's headquarters in New York. The closing for the sale of Hammacher-Schlemmer also took place in New York.

■ Based on these facts, defendants have moved for summary judgment on both counts of the complaint. Plaintiff does not dispute that under New York law an agreement to pay a finder's fee is not enforceable unless it is in writing. *See Cohn v. Geon Intercontinental Corp.,* 62 A.D.2d 1161, 404 N.Y.S.2d 206 (1978). Nor does plaintiff deny that the purported agreement to pay a fee was oral. Instead, Zlotnick contends that Illinois law governs this action and permits the recovery of a finder's fee— whether oral or written—once it is shown that the finder was the "procuring cause" of the acquisition, and that the acquisition

actually took place through his efforts. *Ehrman v. Cook Electric Co.,* 630 F.2d 529 (7th Cir.1980). Thus, the sole issue for resolution is whether this court should apply New York or Illinois law.

*The Choice of Law Principles*

■ In a diversity action a federal court must follow the conflict-of-law rules prevailing in the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ Under traditional Illinois conflict of law principles,[2] the validity, construction and obligation of a contract are determined by the law of the place where it is made and performed. *Walker v. Lovitt,* 250 Ill. 543, 95 N.E. 631 (1911). Where the place of performance differs from the place of making the contract, and the agreement is to be performed wholly in one jurisdiction, then the law of the place of performance governs. *Ehrman v. Cook Electric Co.,* 468 F.Supp. 98, 99 (N.D.Ill.1979), *aff'd* 630 F.2d 529 (7th Cir.1980). If more than one place of performance is involved, the place of contracting determines the construction of the document. *Charles O. Finley & Co., Inc. v. Kuhn,* 569 F.2d 527, 542 (7th Cir.), *cert. denied* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978). Finally, in a "multifaceted situation where the place of making is

---

**2.** Illinois courts seem to be moving away from their traditional "mechanistic" approach and towards the most significant contacts" test. In a recent decision the Seventh Circuit noted this development in a footnote:

> There is some indication that the Illinois rule may be changing. In *Champagne v. W.E. O'Neil Construction Co.,* 77 Ill.App.3d 136, 32 Ill.Dec. 609, 395 N.E.2d 990 (1st Dist.1979), the Second Restatement's "most significant contacts test was extended from tort to contract claims.

*Overseas Development Disc Corp. and Universal Development Corp. v. Sangamo Construction Co., Inc.,* 686 F.2d 498 at 510 n. 43 (7th Cir.1982). *But see D.P. Service, Inc. v. A.M. International,* 508 F.Supp. 162, 164 (N.D.Ill. 1981) ("Illinois has not yet adopted the most significant contacts" approach for contract choice-of-law questions and there is not sufficiently strong indication that the Illinois Su-

preme Court is moving in this direction to justify the court following this new approach), *NII Metals Service, Inc. v. ICM Steel Corp.,* 514 F.Supp. 164, 166 (N.D.Ill.1981).

The most significant relations test particularly makes sense in circumstances like the case at bar, where the contract is "made" during a telephone conversation between persons in two states. This court suspects, moreover, that cases which rely on the traditional approach do so without question only because it would make little difference in result, whichever test was employed.

Since the "most significant relations" test is appropriate here under the established choice-of-law principles, it need not be determined whether the Illinois Supreme Court, faced with the facts in this case, would abandon the "old" approach and turn to an examination of which forum has the most contact with the transaction.

arguable and performance takes place in several states, the Seventh Circuit Court of Appeals has ruled that Illinois applies the law of the state with the most significant contacts to the transaction." *Ehrman v. Cook Electric, supra,* 468 F.Supp. at 99–100. *See P.S. & E. Inc. v. Selastomer Detroit, Inc.,* 470 F.2d 125, 127 (7th Cir.1972).

■ In this case it appears not only that the place of execution and performance differ, but additionally that both took place in more than one jurisdiction. *See Adams Laboratories, Inc. v. Jacobs Engineering Co.,* 486 F.Supp. 383, 389 (N.D.Ill.1980). "Negotiations" between Zlotnick and MacArthur took place via a telephone conversation between New York and Illinois, and the contract could arguably be said to have been executed in either state.[3] Much of the performance under the contract took place in New York, where Zlotnick acquired information concerning Hammacher-Schlemmer, and part of the performance conceivably took place in Illinois, since Zlotnick communicated the information he discovered to Bradford headquarters in Morton Grove. Accordingly, this case fits precisely within what Judge Robson described in *Ehrman* as a multifaceted situation.

In *Ehrman,* the plaintiff, a New York finder, contacted Cook Electric in Illinois by telephone and suggested that he could interest Northern, a Canadian company, in merging with Cook. Ehrman then contacted Northern in Canada and later sent Northern information about Cook. The district court held that the making of the finder's fee agreement, and its performance, arguably take place in several states. In these circumstances conflict-of-law rules of Illinois dictate that the district court apply the law of the state with the most significant contact to the transaction. Contrary to plaintiff's suggestion, the fact that

the instant case involves only two states rather than the three jurisdictions implicated in *Ehrman,* make no difference; the crucial question is not how many, but whether there is more than one jurisdiction involved. Accordingly, this case, like *Ehrman,* is governed by the "significant contacts" test.

Several courts have had occasion to identify the significant contacts to be considered in a finder's fee transaction. As defendants note, such factors include (1) the location of the acquired company; (2) the state where the closing of the acquisition took place; (3) the state where the benefits accrue; and (4) the state where the offer to perform the finder's services was sent. *See Ehrman, supra,* 468 F.Supp. at 100; *Havenfield Corp. v. H & R Block, Inc.,* 509 F.2d 1263, 1268 (8th Cir.), *cert. denied* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). *Cf. Denny v. American Tobacco Co.,* 308 F.Supp. 219 (N.D.Cal.1970).

Consideration of the first two criteria clearly point to New York. Hammacher-Schlemmer is a New York corporation, and the closing took place in New York. As for the third factor, both New York and Illinois would likely receive the benefits of the acquisition. Finally, while Illinois was the state into which the offer was sent, this factor should be given the least weight. Just as valid would be to add into the equation that the *acceptance* was "sent" into New York, cancelling out the inference that one party came into the other's state and thereby accepted the protection and assumed the burdens of that state's laws.

■ Based on these facts, and the additional consideration that the vast majority of the acts constituting performance under the contract occurred in New York, this court finds that New York has the most significant relation to the cause of action.

---

**3.** It is, as defendant notes, difficult to justify the conclusion that the contract was executed in Illinois simply because a phone call happened to be placed into that state. The reasoning behind the choice-of-laws principles logically bear little real relationship to the fortuitous circumstance of who happened to place a phone call. Further, there appears to be no

rational explanation for finding that the "offer moves along the phone lines to the jurisdiction of its receipt (Illinois), while the acceptance does not, and remains exclusively in the jurisdiction of its origin." (Defendant's Reply Memorandum in support of its Motion for Summary Judgment.)

And because New York precludes an action for *quantum meruit* or for enforcement of a contractual arrangement based on an oral contract, defendants' motion for summary judgment is granted.