**SCOTT/HUBBARD COMPANY, INC., an Illinois corporation, Plaintiff,**

v.

**SIKA CHEMICAL CORPORATION, a New Jersey corporation, Defendant.**

No. 87 C 4750.

United States District Court, N.D. Illinois, E.D.

Aug. 16, 1988.

Michael J. Philippi, Scott/Hubbard Co., Crystal Lake, Ill., Michael T. Trucco, Robert A. Chapman, Coffield Ungaretti Harris & Slavin, Chicago Ill., for plaintiff.

Rich M. Schoenfield, Ettinger Schoenfield & Katz, Ltd., Chicago Ill., John J. Carlin, Jr., Florham Park, N.J., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Scott/Hubbard brought this diversity action alleging that defendant Sika breached its promise to tender a finder's fee of $210,000 that plaintiff earned by informing defendant that a certain corporation—which defendant later purchased—was available for acquisition. Count I states a breach of contract claim, while count II seeks relief under the theory of *quantum meruit.* Defendant responded in part by asserting that the suit was barred because the parties did not enter into a written agreement and plaintiff did not comply with state licensing requirements applicable to brokers.

Plaintiff moved to strike the two affirmative defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure asserting that the parties' oral contract was enforceable and that because it acted as a "finder" and not a "broker" under Illinois law no license was required. Defendant countered that plaintiff did not act simply as a finder, and that Missouri law applied, rendering the contract unenforceable.

In ruling on plaintiff's motion to strike, we held that the question of whether plaintiff acted as a finder or broker would remain an open one and gave the parties further opportunity to brief the conflicts-of-law issue. For present purposes the parties were asked to assume that plaintiff was a finder. *Scott/Hubbard Co. v. Sika Chemical Corp.*, 87 C 4750 (N.D.Ill. Oct. 6, 1987) [available on WESTLAW, 1987 WL 18335]. Applying Illinois conflicts principles, we now determine that Illinois or New Jersey law controls this matter.

## FACTS

Plaintiff, an Illinois corporation with its principal place of business in Illinois, is a business-finder that assists clients in corporate investments, acquisitions and mergers. In October 1986 plaintiff learned that Ash Grove Cement Company wanted to sell its subsidiary, Chemical Sealing Corporation (Chemseco), whose principal place of business was located in Kansas City, Missouri. Operating from his office in Illinois, Peter Poulos, president of Scott/Hubbard, wrote a letter informing Reinhard Rutz, president of Sika, a New Jersey corporation with its principal place of business in that state, that Chemseco was for sale (cplt. ¶ 6).[1] On November 4, 1986, Rutz, operating from New Jersey, telephoned Poulos in Illinois to advise him that Sika was interested in acquiring Chemseco. According to plaintiff, during this conversation Rutz agreed to pay plaintiff a finder's fee based on a particular formula (totalling $210,000), upon completion of the sale. Rutz contends that Poulos represented himself as Ash Grove's broker and that defendant would be required to pay a fee only if Ash Grove did not (Rutz aff. ¶ 4). Defendant proffers a letter from plaintiff supporting the latter assertion. *See* def. mem. opp. mo. to strike, exh. I. ("If the seller pays the fee, no fees are due from SIKA"). Rutz claims that he immediately contacted Ash Grove and was told that plaintiff was not its representative and that he should negotiate directly with Chemseco.

On November 5, 1986, plaintiff sent defendant further information about Chemseco, and a fee agreement for plaintiff's purposes signed by Poulos. *See id.* On November 18, 1986, Rutz met with a representative of Chemseco in New Jersey and later that month traveled to Kansas City, Missouri twice to discuss the acquisition of Chemseco (Rutz aff. ¶ 7).

On December 8, 1986, Rutz telephoned Poulos to inform him of the status of the transaction. Rutz claims that he also stated that he did not agree to the fee schedule as set forth in the agreement that he had received from Poulos (Rutz aff. ¶ 8). Plaintiff claims that Rutz accepted the agreement in full (cplt. ¶ 10). Poulos then traveled to New Jersey to meet with Rutz. At this time Rutz stated that defendant would not pay the fee as detailed in the agreement, and made any payment contingent upon plaintiff's performance of additional services. Rutz states he believed plaintiff agreed to this modified arrangement (Rutz aff. ¶ 9, cplt. ¶ 11). Approximately one week later plaintiff refused defendant's offer.

Sika subsequently purchased Chemseco, pursuant to a contract signed in Missouri on January 26, 1986, which provided that the sale was governed by Missouri law (Rutz aff. ¶ 11). The transaction closed in Missouri on March 10, 1987 (Rutz aff. ¶ 11) and Sika acquired Chemseco for $11,000,-000 (cplt. ¶ 12). Under the contract Sika obtained deeds to real property located in Missouri, New Jersey, California, Michigan and Georgia (Rutz aff. ¶ 12).

## DISCUSSION

■ In diversity cases a federal court must follow the conflict-of-laws principles prevailing in the state in which it sits. *Kalxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). We thus look to Illinois' choice-of-law principles.

■ While the Illinois Supreme Court has yet to rule on the precise issue, the Seventh Circuit Court of Appeals has held that Illinois law requires that we apply the "most significant contacts" approach in all choice-of-law disputes involving contracts. *Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1109 (7th Cir.1987). Under the most significant contacts rule we consider the following five factors: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, place of incorporation and place of business of the parties.

---

**1.** Rutz claims that Poulos identified the target acquisition only as "a special chemical company," which he "strongly suspected" was Chemseco (Rutz aff. ¶¶ 2 and 3). We do not find this possible discrepancy relevant to the dispute before us and we do not address it further.

*Champagnie v. W.E. O'Neil Construction Co.,* 77 Ill.App.3d 136, 145, 32 Ill.Dec. 609, 615, 395 N.E.2d 990, 1051 (1st Dist.1979).

■ Before applying these factors, we note that they must be considered in the context of the finder's agreement (the contract between plaintiff and defendant) and not the acquisition agreement (the contract between Sika and Chemseco). In arguing that Missouri has the most significant contacts, defendant lumps both contracts together and locates the place of performance and the situs of the subject matter in Missouri, where Chemseco was located, where the transaction closed and the state chosen by defendant and Chemseco to govern the acquisition agreement. While the finder's agreement provided that plaintiff would only collect its fee if defendant acquired Chemseco, this condition did not affect the formation of the alleged finder's agreement between the parties, and we view the two agreements separately.

■ We are aware that in *Zlotnick v. MacArthur,* 550 F.Supp. 371, 374 (N.D.Ill. 1982), an action involving a finder's fee contract, this court found "significant" contacts such as the location of the acquired company and the state where the transaction closed. The court also gave great weight to the state where "the vast majority of the acts constituting performance under the contract occurred." *Id.* Here, in contrast, the majority of the acts constituting performance of the finder's fee agreement occurred in Illinois (the state from which plaintiff sent defendant the information about Chemseco and New Jersey, presumably the state from which defendant was to perform its obligations under the agreement and pay plaintiff for its services). The fact that the acquisition contract was closed, and the acquired company was located in Missouri, does not lead us to the conclusion that the contacts between the parties to the finder's agreement and that state were significant. By nature of its

business, plaintiff necessarily enters into contracts referring to acquisitions of companies located nationwide. Simply because one of the acquired businesses is located in a particular state does not make that state's interest in the contract for plaintiff's services particularly relevant to litigation over the services contract. Here defendant contends that there was no finder's contract and resort to the laws of Illinois or New Jersey (and not Missouri) will be necessary to determine whether such a contract existed. In these circumstances Missouri's contacts with the finder's contract and this litigation are at best random, and, as we shall see, carry little significance.[2]

Turning to the first two of the five factors, the place of contracting and negotiating was arguably Illinois or New Jersey. Defendant's assertion that negotiations occurred in Missouri again fails to distinguish between the two contracts involved here. While negotiations for the acquisition of Chemseco may have been conducted solely in Missouri, we do not find such acts relevant to the alleged finder's contract negotiated by the parties in Illinois and New Jersey. As noted earlier, performance of the finder's agreement was to take place in Illinois and New Jersey since plaintiff was to (and claims it did) send information about Chemseco from its Illinois offices and defendant was to tender the finder's fee to plaintiff presumably from its office in New Jersey. Since the finder's agreement was a contract for services, we find the fourth factor (the location of the subject matter of the contract) of little relevance here. *See Gilberg Ltd. v. Craftex Corp.,* 665 F.Supp. 585, 591 (N.D.Ill.1987). Finally, the domiciles, residences, places of incorporation and places of business are evenly divided between Illinois (plaintiff) and New Jersey (defendant). Thus, balancing all relevant factors, Illinois and New Jersey have the most significant con-

---

**2.** We note, finally, that *Zlotnick* was decided at a time when Illinois law was in a state of flux regarding the proper choice-of-law rule to apply to contract actions. 550 F.Supp. at 373–74. The focus of *Zlotnick* was whether the "significant contacts" approach was appropriate at all.

Since then the Seventh Circuit has held that the test does apply, *see Palmer,* 823 F.2d at 1109, and has set forth five specific factors that we must consider in analyzing choice-of-law issues. We thus apply the factors most recently detailed by the Seventh Circuit.

tacts, and those of Missouri are the least significant.[3]

Further, as regards the licensing issue in particular,[4] Illinois has the most significant interest in how businesses incorporated in Illinois (and maintaining their principal places of business in Illinois) are controlled by the state. It is unlikely that the Missouri legislature, in requiring licenses of its resident finders, sought to regulate foreign businesses whose only connection with Missouri was the location of the acquired property. The service contract here between two businesses that were not Missouri residents, did not have significant contact with the state of Missouri.

Finally, applying Missouri law would render the finder's contract invalid while applying Illinois law may result in an enforceable contract (unless plaintiff acted as a broker and was required to obtain a license under Illinois law). In such circumstances, the Second Restatement's rule of validation instructs us to apply Illinois law. Restatement (Second) Conflict of Laws § 6 comment g (1971) (protection of the parties' "justified expectations" is central to choice-of-law analysis).

Defendants assert that Missouri law, which requires that both brokers and finders obtain licenses, applies here. Plaintiff maintains that Illinois law requiring licenses only of brokers and not finders, applies to the licensing issue. We find Missouri law inapplicable to the licensing issue and hold that it is controlled by either Illinois or New Jersey law. Neither party has addressed the applicability of New Jersey law and we assume, unless advised to the contrary by the parties, that applying either Illinois or New Jersey law to the licensing question would present no conflict of laws.

3. Even if we were to consider the significant contacts for finder's fee transactions enumerated in *Zlotnick*, 550 F.Supp. at 374, we would not find Missouri law controlling. While the location of the acquired property is Missouri, and the acquisition closed there, Illinois, New Jersey and Missouri would likely benefit from the transaction and the contract, *see id.*, and the contract to perform the finder's services was sent from Illinois to New Jersey. Also as noted above, performance of the contract was to take place primarily in Illinois and New Jersey.

## CONCLUSION

For the foregoing reasons we hold that Missouri does not apply to the licensing question and that it is controlled by the laws of either Illinois or New Jersey.

These facts point to either New Jersey or Illinois as the state with the most significant contacts to the entire transaction, when viewed as a whole.

4. Since neither Illinois nor Missouri requires a writing to enforce the alleged contract, plaintiff's claim is not barred by the statute of frauds under either state's law. The issue therefore does not present a conflicts question and we consider it no further.