HARRY OLSEN *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. JAMES V. CELANO, JR., *et al.*, Defendants-Appellees and Cross-Appellants (Thomas J. Pitts, Defendant).

Second District    No. 2—91—1087

Opinion filed September 30, 1992.

Cary S. Fleischer, of Chuhak, Tecson, Kienlen, Feinberg, Grasso & Josephson, of Chicago, for appellants.

Howard C. Goode, of Northbrook, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, Harry Olsen and Draper & Kramer, Inc., appeal from a judgment entered in favor of defendants, James V. Celano, Jr., Marina Enterprises and Prairie Cove Marina, at the close of plaintiffs' case during a bench trial. Defendant, Thomas J. Pitts, was not served with summons, did not participate in the proceedings before the trial court, and is not a party to this appeal. The sole issue raised by plaintiffs on appeal is whether the trial court erred in granting defendants' motion for a directed finding at the close of plaintiffs' case based on its determination that plaintiffs were barred by Wisconsin law from recovering a commission for the sale of real estate located in Wisconsin. Defendants have cross-appealed from the trial court's order denying their motion for sanctions against plaintiffs.

Plaintiffs filed an amended complaint seeking a commission from defendants for the sale of real estate. They alleged that Olsen was an agent of Draper & Kramer, Inc., an Illinois corporation authorized to transact business involving real estate leasing, management and sales.

They further alleged that defendant Prairie Cove Marina was a limited partnership consisting of the remaining defendants and other limited partners. They alleged that the limited partnership was the owner of property located in Wisconsin. Plaintiffs alleged that they brought together Dennis Heck and U.S. Coastal Development Company, as prospective purchasers, and defendants, as prospective sellers of the property. Plaintiff Olsen and defendants entered into an agreement which provided that defendants would pay plaintiffs a commission equaling 6% of the purchase price of the property if a purchase agreement was entered into between U.S. Coastal Development Company and defendants.

Plaintiffs further alleged that a contract for the sale of the property was signed on November 14, 1989. A copy of the contract was attached to the amended complaint and stated that U.S. Coastal Development Company, a Michigan corporation, agreed to purchase the property located in Pleasant Prairie, Wisconsin, from Prairie Cove Partners Limited Partnership, an Illinois limited partnership, for the purchase price of $3,100,000. Plaintiffs alleged that the sale was closed in May 1990, but that, despite repeated demands, defendants refused to pay plaintiffs the commission due. Plaintiffs, therefore, sought judgment against defendants in the amount of $186,000.

Defendants filed an answer to the amended complaint. As a first affirmative defense, they alleged that plaintiffs were not the procuring cause of the transaction. As a second affirmative defense, they alleged that plaintiff Olsen was not licensed as a real estate broker in Wisconsin.

At trial, Olsen testified that he was a real estate broker and had been licensed in the State of Illinois since 1975. He was not licensed in Wisconsin. He was associated with Draper & Kramer from 1983 until January 1990. He testified that he met Dennis Heck, owner of U.S. Coastal Development Company, in Michigan in 1987 or 1988. Heck's company was in the business of developing marinas. Heck asked Olsen to help him find marina opportunities near metropolitan Chicago.

Olsen testified that he contacted people and investigated many different areas in an attempt to locate potential properties for Heck. A tour was scheduled for January 12, 1989, to show Heck properties which he might be interested in purchasing. On that date, Olsen and Heck toured Prairie Cove Marina in Wisconsin. Thomas Pitts and his associate were present during the tour. This was the first time Heck had seen that property.

That afternoon, Pitts gave Olsen a business card which stated that Pitts and Celano were co-owners of the property. Olsen testified that he and Pitts spoke privately that day concerning a commission. Olsen subsequently had a number of telephone conversations with Pitts. Olsen identified two letters from Pitts addressed to him. A letter dated January 24, 1989, stated that Pitts "would entertain an offer at $1.5 million plus a full commission of 6% to you as a broker." A letter dated February 23, 1989, stated:

> "As I indicated verbally already, I will agree to pay your firm a fee equal to six percent of the sale price for the Prairie Cove Marina in the event an offer is found acceptable, and a sale concludes with U.S. Intercoastal d/b/a Denny Heck."

Olsen testified that the letters were faxed to him in Illinois. He also stated that the 6% figure was agreed upon on the telephone.

Olsen also identified a written offer, dated February 23, 1989, in which U.S. Coastal Development Company offered to purchase the property for $1,800,000. The offer stated that it would be the sellers' responsibility to pay any commission due to Draper & Kramer. Olsen testified that a meeting was held concerning the offer on February 23, 1989, at the property in Wisconsin. At the meeting, Celano rejected the offer. Olsen had some contact with Pitts' office in March regarding the possible sale of the property to Heck. After that, Olsen did not hear from Pitts. Olsen eventually spoke to Heck in the latter part of 1989 and became aware that the property was being sold to Heck. Olsen was not involved in drafting the contract for the sale of the property to U.S. Coastal Development Company. Prior to the closing on the sale of the property, Olsen contacted Celano about his commission. The closing took place, but Olsen did not receive a commission.

During cross-examination, Olsen identified a written agreement for a 6% commission, dated February 23, 1989, which was signed by Pitts. Olsen testified that Pitts signed the agreement at the meeting in Wisconsin.

James Celano was called as an adverse witness by plaintiffs. He testified that he was an Illinois resident until June 1991 and that his place of business was in Illinois. He stated that he entered into an agreement to buy Pitts' interest in the subject property on March 24, 1989. He then formed a limited partnership which owned the marina property. The sale to U.S. Coastal Development Company was closed on June 1, 1990, at the marina in Wisconsin.

Following this testimony, defendants orally moved for a directed finding. The court stated:

"[I]t's *** clear from the evidence that this is a Wisconsin transaction. Under all of the case law in so far as applicable law, the law to apply to this case is the law of the State of Wisconsin. Wisconsin has a clear and unequivocal public policy concerning recovery by brokers who are not licensed in the State of Wisconsin. *** Under the State of Wisconsin law, *** the plaintiff cannot recover either in quantum meruit or as a broker under any agreement. And to allow recovery under Wisconsin law in quantum meruit would defeat the public policy concerning brokers. And therefore, I find, at the close of the plaintiff's case, I find in favor of the defendant and against the plaintiff."

A written order granting judgment in favor of defendants was entered August 1, 1991.

On August 5, 1991, defendants filed a motion for sanctions. They alleged that plaintiffs' amended complaint contained allegations which were untrue and unsupported by any evidence. They also alleged that plaintiffs and their attorneys should have known that they had no right to a real estate brokerage commission as Olsen was not licensed as a real estate broker or salesperson in Wisconsin. Defendants sought $9,322 in legal fees and costs. Following a hearing on August 26, 1991, defendants' motion was denied.

Plaintiffs subsequently filed a timely notice of appeal from the judgment for defendants, and defendants have cross-appealed seeking reversal of the order denying their motion for sanctions. Defendants have also filed a motion with this court seeking sanctions on appeal pursuant to Supreme Court Rule 375(b) (134 Ill. 2d R. 375(b)). We have ordered the motion taken with the case.

Plaintiffs argue on appeal that the trial court erred in entering judgment for defendants based upon Wisconsin law pertaining to real estate brokers. They first argue that the relevant Wisconsin statute applies only to actions brought in the State of Wisconsin. They also contend, in the alternative, that Wisconsin law should not apply to this situation.

■■ We initially conclude that the Wisconsin statute pertaining to brokerage commissions does apply to plaintiffs' cause of action to recover a real estate commission. In *Frankel v. Allied Mills, Inc.* (1938), 369 Ill. 578, 582, the supreme court held that the validity of a contract for a commission for the sale of real estate is determined by the law of the State where the contract is made or is to be performed. In that case, the real estate was located in Illinois, but the contract to pay a real estate commission to the Illinois broker was

made in New York. The court concluded that New York law governing real estate brokerage contracts controlled. *Frankel*, 369 Ill. at 583-84.

Here, the trial court found that this was a Wisconsin contract. We conclude that this factual finding was not against the manifest weight of the evidence. Olsen testified that he discussed payment of a commission with Pitts in Wisconsin on January 12, 1989, when he brought Heck there to tour the property. An agreement to pay a 6% commission was subsequently signed by Pitts in Wisconsin on February 23, 1989. The sale of the property was closed in Wisconsin on June 1, 1990. Therefore, the trial court could reasonably determine, based upon the evidence, that the contract to pay a commission for the sale of real estate was made and was to be performed in Wisconsin. Based upon *Frankel*, we look to Wisconsin law to determine the validity of the contract.

In arguing that Illinois law should apply, plaintiffs rely on *Scott/Hubbard Co. v. Sika Chemical Corp.* (N.D. Ill. 1988), 694 F. Supp. 1311. *Scott/Hubbard* was a diversity action seeking recovery of a finder's fee for the acquisition of a corporation. The Federal district court stated that Illinois law requires that a court apply the "most significant contacts" approach in all choice-of-law disputes involving contracts. (*Scott/Hubbard*, 694 F. Supp. at 1313.) We recognize that we recently noted that the most significant contacts rule applies in contract actions where the parties have neglected to make an effective choice of law. (*Jakubik v. Jakubik* (1991), 208 Ill. App. 3d 119, 123.) "Contacts to be evaluated in connection with applying this principle include the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation and business of the parties." *Illinois Tool Works, Inc. v. Sierracin Corp.* (1985), 134 Ill. App. 3d 63, 69; see also *Scott/Hubbard*, 694 F. Supp. at 1313-14.

Plaintiffs argue that, based upon this test, Illinois law should apply. They contend that Illinois is the place of contracting. They point out that a broker agreement was sent by Pitts to Olsen in Illinois and that the contract between the buyer and seller provided that it would be construed in accordance with Illinois law and that the obligations created were performable in Northbrook, Illinois. They also point out that the parties to the lawsuit are all Illinois residents, noting that Celano and the other partners in the limited partnership are all Illinois residents. They conclude that Illinois has the most significant relationship with the contract and the parties.

Having determined that the contract was made in Wisconsin, the issue of its enforceability may be resolved under the rule in *Frankel*

without reference to the significant contacts test. As previously discussed, there is ample evidence to support the trial court's apparent finding that the contract to pay a real estate commission was made in Wisconsin. The fact that Pitts faxed letters from Wisconsin to Illinois confirming this agreement does not transform a contract made in Wisconsin into an Illinois contract. Also, the fact that the contract between the buyer and seller stated that it was to be construed in accordance with Illinois law is immaterial as that is not the contract plaintiffs are seeking to enforce. They are seeking to enforce the contract to pay their commission which the trial court found was entered into in Wisconsin. The court in *Scott/Hubbard* specifically recognized that the two agreements must be reviewed separately and that the State chosen by the buyer and seller to govern the acquisition agreement does not determine which State's law governs the contract between the real estate broker and the seller. *Scott/Hubbard,* 694 F. Supp. at 1314.

If a contract is void under the law of the State where it was made it will not be enforced in Illinois courts even though it would have been valid if made in Illinois. *Frankel,* 369 Ill. at 582.

Sections 452.03 and 452.20 of the Wisconsin Statutes, relating to real estate practice, provide:

> "No person may engage in or follow the business or occupation of, or advertise or hold himself or herself out as, or act temporarily or otherwise as a broker or salesperson without a license." (Wis. Stat. §452.03 (1989).)

And:

> "No person engaged in the business or acting in the capacity of a broker, salesperson or time-share salesperson within this state may bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he or she was a duly licensed broker, salesperson or registered time-share salesperson at the time the alleged cause of action arose." Wis. Stat. §452.20 (1989).

Based upon the latter statute, Wisconsin courts have held that, where the broker acted as a broker in Wisconsin but was not licensed in Wisconsin, an agreement for the payment of a commission to the broker was invalid from its inception. (*Chapman Co. v. Service Broadcasting Corp.* (1971), 52 Wis. 2d 32, 38, 187 N.W.2d 794, 797; *Kemmerer v. Roscher* (1960), 9 Wis. 2d 60, 63, 100 N.W.2d 314, 317.) Federal courts, construing Wisconsin law, have determined that an Illinois broker, not licensed in Wisconsin, could not recover a commis-

sion for the sale of real estate located in Wisconsin. *Reed v. Kelly* (7th Cir. 1949), 177 F.2d 473, 475-76; *George Nangen & Co. v. Kenosha Auto Transport Corp.* (E.D. Wis. 1965), 238 F. Supp. 157, 159. But *cf. Paulson v. Shapiro* (7th Cir. 1973), 490 F.2d 1, 4 (Illinois broker could maintain action for commission for sale of property located in Wisconsin where he established by filing a sworn statement that all negotiations occurred in Illinois and Tennessee and that he had not acted in the capacity of a real estate broker within the State of Wisconsin).

In this cause, the facts support a conclusion that Olsen was acting as a "broker" in Wisconsin. He arranged to bring Heck to Wisconsin to tour the property to attempt to negotiate a sale of the property for a commission. (See Wis. Stat. §452.01(2)(a) (1989).) There is no dispute that Olsen had an Illinois broker's license but did not have a Wisconsin broker's license. Plaintiffs argue, however, that Wisconsin, in section 452.20, only precludes a broker unlicensed in Wisconsin from bringing an action for the collection of a commission "in the courts of this state." (See Wis. Stat. §452.20 (Supp. 1991).) They contend that, while they could not maintain this action in Wisconsin, the statute does not bar such an action in the courts of Illinois. Again, we disagree with plaintiffs.

The supreme court in *Frankel v. Allied Mills, Inc.* (1938), 369 Ill. 578, denied a plaintiff recovery under similar circumstances. In *Frankel*, the contract for the commission was made in New York, where the Illinois broker was not licensed. New York, as Wisconsin has here, had a statute which forbade any person from acting, even temporarily, as a real estate broker without a license and forbade any unlicensed person from bringing an action "in any court in that State" to recover compensation for services rendered as a broker. (*Frankel*, 369 Ill. at 582.) The court held, as previously noted, that New York law applied to the transaction and then held that, as the brokerage contract was void and invalid in New York, it would not be enforced in Illinois. *Frankel*, 369 Ill. at 583-84.

We conclude that *Frankel* is on point and must be followed in this cause. As Olsen was not licensed in Wisconsin and the contract for a real estate commission was made in Wisconsin, it was invalid from its inception and could not be enforced in Illinois. We note that the holding of *Frankel* follows the general rule that a brokerage contract which is invalid as not in compliance with the law of the place of the contract is unenforceable everywhere. (See *Gold v. Wolpert* (7th Cir. 1989), 876 F.2d 1327.) As *Frankel* is controlling authority on this issue, plaintiffs' reliance on a Wisconsin case involving a different, inapplicable statute, *Schroeder v. Ajax Corp.* (1976), 71 Wis. 2d 828,

239 N.W.2d 342, and a Washington case, *In re Estate of Stoddard* (1962), 60 Wash. 2d 263, 373 P.2d 116, is misplaced. We additionally note that *Stoddard* is inapposite. The court in *Stoddard* held that Washington's statute precluding recovery of a commission by a broker not licensed in Washington did not apply because the contract for a commission was executed in Oregon. (*Stoddard*, 60 Wash. 2d at 267, 373 P.2d at 119.) The facts of *Stoddard*, therefore, are not analogous to the facts here. We conclude that the trial court properly entered judgment in favor of defendants.

■ In their cross-appeal, defendants argue that the trial court erred in denying their motion for sanctions. They contend that plaintiffs' cause of action was without merit because it was obvious and well known to plaintiffs and their attorney that the action could not be maintained because "all relevant events occurred in Wisconsin" and Olsen did not have a Wisconsin real estate broker's license. Defendants also point out other problems they perceive with plaintiffs' cause of action against them. Defendants additionally claim that plaintiffs' amended complaint included allegations which were untrue and unsupported by any evidence introduced at trial.

The decision whether to award attorney fees and expenses as sanctions rests within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. (*Monahan v. Village of Hinsdale* (1991), 210 Ill. App. 3d 985, 995.) The fact that the trial court found the facts to be ultimately adverse to the pleadings is not enough to warrant an award of attorney fees. *Monahan*, 210 Ill. App. 3d at 995.

In this cause, we conclude that the trial court did not abuse its discretion in denying defendants' motion for sanctions. While plaintiffs' amended complaint may have been inartfully drafted, we conclude, as we did in *Monahan*, that there is no evidence that plaintiffs' pleadings contained intentionally false allegations. (See *Monahan*, 210 Ill. App. 3d at 996.) We note that one of the "untrue" allegations defendants have pointed out is plaintiffs' allegation that the seller of the property, Prairie Cove, was an Illinois limited partnership. There certainly was a basis for this allegation as the contract for the sale of the property stated that the seller was an Illinois limited partnership. Defendants did not provide documentation that the limited partnership was, in fact, a Wisconsin limited partnership until they filed their motion for sanctions against plaintiffs.

We also conclude that plaintiffs did not file a frivolous lawsuit warranting sanctions. Testimony at trial and documentary evidence

established that this transaction involved contacts with Illinois. Plaintiffs did have a basis for arguing that Illinois law applied. (See *Coldwell Banker & Co. v. Karlock* (7th Cir. 1982), 686 F.2d 596, 601-02.) As noted, the fact that the trial court found otherwise and determined that the Wisconsin statute controlled does not mean that sanctions are warranted. We also note that there was a factual basis for plaintiffs' cause of action. It is undisputed that Olsen was the first to show the property to Heck, whose company ultimately purchased the property. It is also undisputed that there was a documented agreement between Pitts and Olsen for the payment of a 6% commission if Heck's company, U.S. Coastal Development Company, purchased the property.

Defendants have also filed a motion with this court seeking sanctions on appeal pursuant to Supreme Court Rule 375(b) (134 Ill. 2d R. 375(b)). They essentially contend that sanctions are warranted on appeal based upon the same arguments they raised to assert that sanctions should have been imposed by the trial court. For the same reasons that we have already rejected those arguments, we decline to hold that this appeal is "not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law" and frivolous. 134 Ill. 2d R. 375(b); see *Colvett v. L. Karp & Sons, Inc.* (1991), 211 Ill. App. 3d 731, 734.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed, and defendants' motion for sanctions on appeal is denied.

Affirmed.

BOWMAN and NICKELS, JJ., concur.