2026 IL App (1st) 250278-U

No. 1-25-0278

Order filed February 10, 2026

SECOND DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

|  |  |  |
|---|---|---|
| GOE GLOBAL ENTERPRISES, INC., | ) | |
| | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | No. 2023L009333 |
| | ) | |
| MINDFUL HEALTHCARE AGENCY, INC., | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Illinois law governs the contract in question, and the circuit court did not err in awarding fees and costs to plaintiff. We affirm.

¶ 2    In the underlying case, GOE Global Enterprises, Inc. (Plaintiff) sought to recover the payment owed to it by Mindful Healthcare Agency, Inc. (Defendant) pursuant to a contract between the two under which plaintiff provided accounting services to defendant. By convenient coincidence, just after defendant received the benefit of plaintiff's services, it discovered that the provision in the contract under which it was to pay plaintiff was

prohibited by regulation in Massachusetts, where defendant is domiciled. Defendant refused to pay for plaintiff's services and plaintiff sued. The circuit court ruled in plaintiff's favor on summary judgment, finding that there was no genuine issue of material fact and that Illinois law applied. As a result, defendant was obligated to uphold its end of the contract and pay plaintiff the promised fee. Plaintiff also successfully sought to recover fees and costs from defendant. On appeal, defendant challenges both orders, alleging that Massachusetts law should control, that the circuit court impermissibly failed to determine whether the amount owed to plaintiff was a reasonable contingent fee, and that the court should not have awarded plaintiff fees and costs. We disagree, and we affirm the circuit court's order.

¶ 3                                    I. BACKGROUND

¶ 4        The facts of this case are undisputed, except where we specifically note otherwise. Defendant is a Massachusetts-based corporation that provides home healthcare services in that state. Plaintiff, which is incorporated in and maintains its primary place of business in Illinois, offered its services to defendant for the purpose of submitting the necessary forms to the Internal Revenue Service to obtain employee retention credit (ERC) tax refunds for defendant. There is disagreement between the parties' factual accounts as to whether plaintiff's agent approached defendant to solicit its business or whether defendant's agent inquired with plaintiff about its services. Regardless, the parties negotiated and signed the contract (the Agreement) at the heart of this dispute.

¶ 5        The Agreement estimated that defendant would receive $1,940,000 as a result of plaintiff's efforts. It dictated that defendant would pay plaintiff $485,000 "as professional fees for services rendered hereunder *** upon receipt of any portion of the ERC amount."

The Agreement further stated: "In the event the IRS does not pay ERC to [defendant], [plaintiff] agrees to waive the afore-referenced professional fees."

¶ 6        The contract was clear about the parties' intentions as to the applicable law, stating:

"If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

\*\*\*

All matters arising out of or relating to this Agreement or the transactions contemplated hereby shall be governed by and construed in accordance with the internal laws of the State of Illinois without giving effect to any choice or conflict of law provision or rule (whether of the State of Illinois or any other jurisdiction).

\*\*\*

"In the event that [plaintiff] institutes any legal suit, action, claim, demand, or proceeding, including arbitration, against [defendant] in respect of a matter arising out of or relating to this Agreement, [plaintiff] shall be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by [plaintiff] in conducting such suit, action, claim, demand, or proceeding, including its reasonable attorneys' fees and expenses, court costs and arbitration fees."

¶ 7        Defendant received an ERC tax refund, but the amount and circumstances are unclear due to defendant's bizarre handling of the facts surrounding the refund. Plaintiff asserted in its complaint that its services resulted in it filing amended tax filings for defendant and defendant receiving "more than $1,768,647.00" from the IRS. Defendant answered this

3

allegation with the unclear statement: "It states the complaint speaks for itself. It denies the remaining allegations." Plaintiff alleged that it submitted specific documents to the IRS reflecting that defendant was entitled to that refund. Defendant answered by stating that "it has no knowledge sufficient to form a belief as to the truth of the allegations in that paragraph." Plaintiff alleged that "[a]s a result of Plaintiff's services, Defendant received the benefit of the Refund from the IRS in the amount of $1,768,647.00, or substantially all of that amount." Defendant answered, stating that "[i]t admits that it received a refund as a result of Plaintiff's services. It denies the remaining allegations." Plaintiff alleged that "[b]ut for Plaintiff's advisory and accounting consulting services, Defendant would not have received all, or substantially all, of the $1,768,647.00 from the IRS." Defendant denied that allegation. In its answer, defendant raised the affirmative defense that the Agreement was "unethical, illegal, and unenforceable pursuant to 252 Mass. Code Regs. § 3.03."

¶ 8　　Plaintiff filed a request to admit that clarified the matter. In it, plaintiff presented a series of statements that it submitted Form 941-X tax documents to the IRS on defendant's behalf and that defendant received various amounts of money from the IRS as a result. Through its responses, defendant asserted that it did receive $1,768,647.00 from the IRS, but it did not know if the payment was a result of plaintiff's efforts because plaintiff refused to provide any documents that it submitted to the IRS on defendant's behalf, and because defendant was unable to learn through reasonable inquiry whether the payment was a result of such efforts on plaintiff's part. Defendant deposited "at least one check" from the IRS but denied any knowledge of whether it was connected with plaintiff's efforts. Defendant, in its subsequent filings, including its response to plaintiff's motion for summary judgment and its appellate brief, has assiduously avoided stating that it received a refund at all, even when discussing

plaintiff's alternative theory of unjust enrichment, while simultaneously admitting that plaintiff did perform services for it. This is a glaring omission in defendant's factual account and in its briefs when defense counsel could easily comply with its duty of candor by acknowledging the refund received from the IRS, as it did in its pleadings, while still questioning that the resulting refund was due to plaintiff's efforts. That said, it is difficult to believe that defendant could not, with reasonable effort, obtain information from the IRS regarding its own tax filings, even if plaintiff was uncooperative. Thus, we see no reason for this simple statement of fact to be so elaborately and tacitly contentious, while also being admitted in the pleadings.

¶ 9                                    A. Summary Judgment

¶ 10        Plaintiff filed a motion for summary judgment on July 23, 2024. In the accompanying memorandum, plaintiff argued that (1) defendant's affirmative defense could not prevail because the Agreement was governed by Illinois law, (2) even viewing the evidence in the light most favorable to defendant, the parties voluntarily signed a valid and enforceable agreement under which defendant owed plaintiff $485,000 in professional fees, and, in the alternative, that (3) defendant keeping the benefit of plaintiff's efforts without compensating it constitutes unjust enrichment.

¶ 11        In its August 29, 2024 response to the motion, defendant asserted that (1) plaintiff's agreed-upon fee was a contingent fee forbidden by Massachusetts law, (2) because Massachusetts has the greatest interest in the matter in question, its law should be applied despite the choice of law provision, (3) even if we apply Illinois law, it requires that an illegal contract, including this one that is illegal in Massachusetts, not Illinois, is void, (4) the trial court failed to perform a mandatory reasonableness assessment of the contingency fee,

5

(5) plaintiff's alternative theory fails because a theory of unjust enrichment is inapplicable to these circumstances, and (6) that although *quantum meruit* would be more appropriate, that theory would also fail, as no evidence was presented to establish the fair value of plaintiff's efforts.

¶ 12        Plaintiff filed a reply on September 11, 2024, in which it argued, among other things, that the Agreement between the parties was not actually a contingent fee agreement because the amount to be paid for plaintiff's services was a flat fee conditioned on plaintiff's success, not a percentage of the refund. As a result, defendant's arguments relying on caselaw concerning contingent fee arrangements and their reasonableness do not apply. Plaintiff rejected defendant's assertion that what plaintiff was asserting is a *quantum meruit* claim mistitled as an unjust enrichment claim. Plaintiff reiterated its unjust enrichment claim, clarifying that the "improvement" provided by plaintiff was its accounting services and the benefit thereof being retained by defendant was the refund issued by the IRS.

¶ 13        On September 25, 2024, the court issued its order granting summary judgment for plaintiff, which defendant now appeals. The court found that the elements of a contract claim were satisfied by facts undisputed by either party: "(1) the existence of a valid and enforceable contract; (2) the plaintiff's performance of all contractual conditions; (3) a breach by the defendant; and (4) resulting damages." Because the contract had an express choice of law provision, the circuit court held that it would govern "unless (1) the chosen jurisdiction has no substantial relationship to the parties or the transaction, or (2) application of the chosen law would be contrary to the fundamental public policy of the jurisdiction with a materially greater interest in the disputed issue. Restatement (Second) of Conflict of Laws § 187 (1971); *State Farm Mutual Automobile Insurance Company v. Burke*, 2016 IL App

(2d) 150462, ¶ 61, *International Surplus Lines Insurance Company v. Pioneer Life Insurance Company of Illinois*, 209 Ill. App. 3d 144, 153 (1990)." The circuit court found that plaintiff did have a substantial relationship to the chosen jurisdiction, as it is an Illinois corporation. It also found that defendant had provided no evidence or argument that Massachusetts has a greater interest in determining the dispute than Illinois, and that no fundamental public policy was implicated. The circuit court declined to review whether the Agreement was or was not a contingent agreement because there is no statutory restriction on such agreements in Illinois.

¶ 14        The circuit court agreed that the unjust enrichment claim was more appropriately termed a *quantum meruit* claim, but neither cause of action could exist when an express written contract between the parties exists. As such, it dismissed the claim.

¶ 15                              B. Petition for Attorney Fees and Costs

¶ 16        On October 22, 2024, plaintiff filed a petition for attorney fees and costs, in which it sought $87,636 in attorney fees and $1,861.38 in costs. The petition noted that the Agreement provided that plaintiff's attorney fees and court costs would be reimbursed by defendant in the event that plaintiff had to resort to legal action to collect its agreed-upon professional fee. In a supporting affidavit, Brian Ledebuhr (Ledebuhr) of Vedder Price, one of the attorneys who represented plaintiff, detailed his qualifications and hourly rate, as well as those of his associates who worked on the case. The petition was also accompanied by an exhibit with the accrued costs and the attorneys' billed hours broken down into tenths of hours.

¶ 17        Defendant responded to the petition on December 4, 2024. Defendant argued that (1) plaintiff's fees and costs were unreasonable because they added up to more than four times the expenses incurred by defendant during the litigation and were in excess of customary

rates, (2) the petition was "facially improper because it fail[ed] to sufficiently describe the time incurred by the Plaintiff's counsel," (3) some of the attorney fees were the result of duplication of effort and were also block-billed, (4) plaintiffs could not recover costs for "electronic legal research, internal copying, and delivery services." Defendant requested that the petition be denied or substantially reduced.

¶ 18    The circuit court granted plaintiff's petition on January 14, 2025, but reduced some of the requested sums. The court found the information contained in Ledebuhr's affidavit and the exhibit to be sufficient, and found the hourly rates to be in line with a customary rate for the Chicago area and a firm of Vedder Price's caliber. The court agreed with defendant that plaintiff engaged in "significant examples of impermissible block-billing," and reduced some of the entries that it considered "vague and generic" entries with multiple tasks lumped together. The court also agreed that there was some duplicative billing, and reduced the fees associated with some conferencing, for the motion for summary judgment, and for the reply brief. Finally, the court found that the costs were all compensable except for internal copying, which the court deducted from the awarded costs. The circuit court awarded plaintiff $64,326.00 in attorney fees and $1,698.38 in costs, for a total of $66,024.38. Defendant timely appealed both the summary judgment order and the fees and costs order.

¶ 19                                    II. ANALYSIS

¶ 20    In this appeal, defendant argues that the circuit court erred in granting plaintiff summary judgment because (1) the circuit court should have applied Massachusetts law and held that the Agreement is illegal and unenforceable, and (2) the court did not examine whether the Agreement's contingent fee was reasonable for the services provided. Defendant also appeals the circuit court's award of fees and costs to plaintiff but only argues that the court should

not have granted that petition because it should not have granted summary judgment in favor of plaintiff.

¶ 21    "Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Internal quotation marks omitted.) *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31; see also 735 ILCS 5/2-1005(c) (West 2024). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from undisputed facts." *Adames v. Sheahan*, 233 Ill. 2d 276, 296 (2009). "Because summary judgment is a drastic means of disposing of litigation, a court must exercise extraordinary diligence in reviewing the record so as not to preempt a party's right to fully present the factual basis for its claim." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305-06 (2005).

¶ 22    "In appeals from summary judgment rulings, the standard of review is de novo." *Lewis v. Lead Industries Association*, 2020 IL 124107, ¶ 15. "When utilizing de novo review, we perform the same analysis that a circuit court would perform." *Jupiter v. Mead Johnson & Company, LLC*, 2025 IL App (5th) 230248, ¶ 22. "We may affirm on any basis appearing in the record [citation], whether or not the circuit court relied on that basis or its reasoning was correct." *Zibrat v. City of Chicago*, 2025 IL App (1st) 241273, ¶ 23.

¶ 23                              A. Choice of Law

¶ 24    Defendant's primary argument in its response to summary judgment and on appeal is that the circuit court should have found the Agreement to be illegal under Massachusetts law and

therefore unenforceable. Defendant's purported reason for refusing to uphold its end of the Agreement is identical: the Agreement is allegedly unethical, illegal, and unenforceable.

¶ 25        "Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions." *Old Republic Insurance Company v. Ace Property and Casualty Insurance Company*, 389 Ill. App. 3d 356, 362 (2009); see also Restatement (Second) of Conflict of Laws §§ 186, 187 (1971). "Generally, choice of law provisions will be honored." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351 (2002). Under the Restatement, the law of the state expressly chosen by the contracting parties applies "unless: (1) the chosen state has 'no substantial relationship to the parties or the transactions and there is no other reasonable basis for the parties' choice,' or (2) its application 'would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.' " *Id*. at 363 (citing Restatement (Second) of Conflict of Laws §187(2)).

¶ 26        With regard to the first prong, defendant devotes significant effort to showing that Massachusetts has a stronger connection to the parties and the transaction, but that is not the question before us. It is undisputed that plaintiff is incorporated and maintains its principal place of business in Illinois. Illinois therefore has a substantial connection to one of the parties and the prong is satisfied. *Dancor Construction, Inc. v. FXR Construction, Inc.*, 2016 IL App (2d) 150839, ¶ 77 (holding that a party being incorporated in Illinois and having a place of business in Illinois is sufficient to establish a substantial connection to that state).

¶ 27        The second prong is a matter of two layers because, as plaintiff correctly notes, the public policy of other states is irrelevant to the matter unless and until we determine that another state has a greater material interest in determining the issue in question. Defendant argues

that *Dancor* is instructive on this matter, but that case concerns a contract regarding the construction of a building in New York. *Id.* at ¶ 80. The contract involving extensive, protracted work on a structure physically located in the state gave New York an obvious and significant material interest in determining the legal issues at play in the contract dispute. This case concerns the preparation and submission of tax forms, which we do not believe to be equal in weight to the construction of a building, even if defendant and the physical copies of their financial documents are located in Massachusetts.

¶ 28    Defendant directs our attention to *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Company*, 166 Ill. 2d 520, 526-27 (1995) and to the Restatement for the proposition that we are to consider the last act to give rise to the contract, the place of contracting, the place of performance, the location of the subject matter, and the residences of the parties as factors when determining the choice of law of a contract. In *Lapham-Hickey*, this relevant language is in a sentence that begins with "[a]bsent an express choice of law." *Lapham-Hickey*, 166 Ill. 2d at 526.

¶ 29    In the Restatement, the cited section follows the section on express choice of law provisions and begins: "The rule of this Section applies in all situations where there has not been an effective choice of the applicable law by the parties." Restatement (Second) of Conflict of Laws §§ 187, 188 (1971). Defendant's choice to cite select portions of these sources to assert that they stand for the opposite of their actual meaning is a mystifying legal strategy that we do not find convincing.

¶ 30    Similarly, but perhaps less egregiously, defendant cites to *Olsen v. Celano*, 234 Ill. App. 3d 1045, 1051 (1992), for the assertion that "if a contract is void under the law of the state where it was made it will not be enforced in Illinois courts even though it would have been

11

valid if made in Illinois." This citation could well be relevant to this case if not for the fact that the *Olsen* contract's illegality in Wisconsin was only relevant because it did not contain a choice of law provision and the court concluded that Wisconsin law applied. *Id*. at 1051-52. We caution defense counsel that mistakes of this nature, especially if repeated, could create the appearance of an inappropriate attempt to hoodwink the court by cherry-picking language that does not accurately reflect the state of the law. Ill. R. Prof'l Conduct R 3.3(a)(3) (eff. Jan. 1, 2010) (Stating that an attorney "shall not knowingly *** fail to disclose to the tribunal legal authority in the jurisdiction known to the lawyer to be directly adverse to the position of the client ***.")

¶ 31        Defendant argues that Massachusetts has a greater material interest in determining the enforceability of the Agreement because it has evinced its interest in the form of a regulation from its Board of Registration in Public Accountancy prohibiting licensees from utilizing contingent fee agreements. 252 Mass. Code Regs § 3.03. The whole of § 3 comprises the Code of Ethics Rules and Professional Conduct for public accountants practicing in Massachusetts. *Id*. § 3.00 *et seq*. Defendant only expands on its argument by citing, albeit inaccurately,[1] to the stated purposes of the code: to maintain "high standards of integrity and dignity in the profession of public accounting." *Id*. § 2.10. We do not believe that Massachusetts choosing to prohibit public accountants from engaging in contingent fee arrangements is sufficient to say that Massachusetts has a greater material interest, and certainly not enough so as to outweigh the express choice of law provision agreed upon by

---

[1] As best we can tell, defendant's citation is to a "Context & Analysis" page provided by Westlaw that uses the phrase "high standards of integrity and dignity in the profession of public accounting." The language appears nowhere in § 3.00 and is instead a reference to similar language in the Board's enabling statute, which allows it the power to adopt rules "dealing, among other things, with independence, integrity and objectivity; competence and technical standards, responsibilities to the public; and responsibilities to clients***." MA ST 112 § 87A 1/2(5). However, the language does appear in 252 Mass. Code Regs 2.10.

the parties in the Agreement. Indeed, under the details of this case, Massachusetts has virtually *no* interest at stake, given that the Massachusetts corporation has already reaped the benefit of the Agreement and the only "harm" to defendant that may result from enforcement of it is having to pay the fee it agreed to pay. On the other hand, even putting aside defendant's contention that plaintiff overcharged for its services, there is no question that plaintiff is owed *something* for its services, and Illinois has at least *some* interest in ensuring that a company incorporated and domiciled in the state is not cheated out of payment through bad faith application of another state's law. Accordingly, we find that Illinois law governs the Agreement.

¶ 32                              B. Reasonableness of the Plaintiff's Professional Fee

¶ 33       Defendant argues that the circuit court was obligated to perform a reasonableness analysis when presented with a contingent fee agreement, and that it erred when it failed to do so. The case to which defendant cites states: "Contingency fee agreements are generally enforced unless they are unreasonable." *In re Estate of Kelso*, 2018 IL App (3d) 170161, ¶ 16. "Courts have the authority to scrutinize contingency fee agreements to ensure that they are reasonable and do not result in the collection of an excessive fee." *Id*. Not only are the cases cited specifically concerned with contingent fee agreements for attorney fees, which are not the subject of the case before us, but the cases and those cases upon which they rely hold only that a court is *permitted* to scrutinize the reasonability of such an agreement. *Id*.; see also *Seiden Law Group, P.C. v. Segal*, 2021 IL App (1st) 200877, ¶ 19, *Jointer v. SVN Management, LLC*, 2020 IL 124671, ¶¶ 52-53, *In re Estate of Sass*, 246 Ill. App. 3d 610, 614 (1993), *Pocius v. Halvorsen*, 30 Ill. 2d 73, 83 (1963).

13

¶ 34      Even if we were to choose to apply the caselaw relevant to attorney fees to plaintiff's professional fee, the case law is clear that the reasonableness question is "left to the *sound discretion* of the trial court." (Emphasis in original.) *Seiden*, ¶ 19. As such, we will only reverse the circuit court where we find the court has abused its discretion. "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the court." (Internal quotation marks omitted.) *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24. We do not believe the circuit court abused its discretion in declining to explicitly address the reasonableness of plaintiff's fee. Since defendant has not provided any authority to support its contention that the reasonableness inquiry was mandatory, we need not delve into the parties' contentions over whether or not the Agreement qualified as a contingent fee agreement.

¶ 35                                              C. Remaining Issues

¶ 36      We note only briefly that the circuit court's decision on unjust enrichment is part of this appeal, yet defendant does not address it. We need not waste excessive space on addressing it, either. As the circuit court held, a theory of unjust enrichment "is inapplicable where an express contract, oral or written, governs the parties' relationship." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25.

¶ 37      Defendant does appeal the award of fees and costs to plaintiff. However, defendant's only argument on that matter is that because summary judgment was inappropriate, the circuit court should not have awarded fees and costs to plaintiff. As we have found that summary judgment was appropriate and defendant makes no further argument on the point, we find that the circuit court's award of fees and costs was not erroneous.

¶ 38    This case should have been what the circuit court called it: a simple contract matter. Instead, defendant has utilized selective interpretations of the law to attempt to take the fruits of plaintiff's labor and deny it the promised compensation. Although we make no finding as to whether the Agreement is unethical, even if we accept that contingent fee arrangements can be used unethically, we believe it a great deal more unethical to deny payment on a thin legal pretense than to make payment contingent on success.

¶ 39                        III. CONCLUSION

¶ 40    For the foregoing reasons, we affirm the circuit court's orders.

¶ 41    Affirmed.